Keith W. RICHARD, Appellant,

v.

Robin J. BOGGS, f/k/a Robin
Richard, Appellee.

No. S–12138.

Supreme Court of Alaska.

July 20, 2007.

John J. Connors, Law Office of John J. Connors, P.C., Fairbanks, for Appellant.

Craig B. Partyka, Cook Schuhmann & Groseclose, Inc., Fairbanks, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Keith W. Richard and Robin J. Boggs agreed to divide their marital property at dissolution in a way that significantly favored Richard. Applying Alaska Civil Rule 60(b)(6), the superior court later vacated the portion of the dissolution decree that adopted their property division agreement. Because the superior court did not abuse its discretion when it vacated that portion of the decree, we affirm.

## II. FACTS AND PROCEEDINGS

Keith Richard and Robin Boggs (formerly known as Robin Richard) separated in April 2002 after twenty-one years of marriage. In December 2002 they jointly filed a dissolution petition that included their agreement for dividing their marital property. This original property division agreement heavily favored Richard, who took between sixty-eight to seventy-five percent of the marital estate.[1] Notably, the parties agreed that Boggs would assume responsibility for all the marital debts and that their most significant marital asset, their house, would be awarded solely to Richard. They valued the house at $104,458.

After a hearing, Standing Master Alicemary L. Closuit issued findings of fact and recommendations regarding the dissolution petition. Master Closuit found that "[t]he parties['] agreements regarding division of the assets of the marriage and division of the debts of the marriage appear to be patently

inequitable." Accordingly, Master Closuit ordered the parties to provide her with a written statement that explained why their agreement was "fair and just under the circumstances."

In response, the parties jointly amended their agreement to explain their rationale. After stating that their top priority was "to continue being good parents to [their] children" and that open communication was integral to their success in that respect, they declared that "any other division of [their] assets and debts would hinder [their] ability to maintain good communication[ ] in parenting [their] children." The parties also declared that because they built their house for their children, they wanted to preserve their children's ability to live there. Thus, with regard to how they would divide ownership of the house, they stated that

> If a 50/50 division of property were required in this agreement, a mortgage would need to be placed on the house. Given the uncertain future of Keith's employment,[2] neither of us are willing to jeopardize the house with a lender in order to make this agreement appear more equitable.

After reviewing the parties' amendment, Master Closuit concluded that the property allocations were just and recommended them for approval by the superior court. In March 2003 the superior court agreed with Master Closuit's recommendation and issued a decree of dissolution of marriage that adopted the proposed property division.

About one year later, Boggs filed a motion to reopen the dissolution decree under Alaska Civil Rule 60(b)(6); she alleged that the justifications for the disparate terms of their agreement had not "come to pass." She specifically argued that the lopsided division of assets had not resulted in open communication between the parties and that the par-

---

1. There is differing evidence regarding the exact percentage that Richard took of the marital estate. Of the property listed in the original property division agreement (including real property, personal property, debts, and nine miscellaneous financial accounts), Richard took $149,135 of the net total of $199,147, or seventy-five percent. The summary of their agreement that the parties later prepared, however, lists Richard as taking

$127,061 of the total of $187,032, or sixty-eight percent.

2. The "uncertain future" clause referred to the uncertain status of Richard's continued employment with the United States Army when the parties entered into their agreement.

ties' "assumption that the house would be placed in jeopardy upon financing with a lender [had] proved incorrect" because Richard could afford to make home equity loan payments, partly because he had secured employment with the military. Richard filed a pro se opposition in which he argued that the property division was fair and should be upheld. Master Closuit recommended that the superior court grant Boggs's Rule 60(b)(6) motion as a matter of law. The superior court eventually granted Boggs's Rule 60(b)(6) motion without a hearing and vacated the property division.

To resolve the parties' now-unresolved property division and child support issues, Master Closuit held an evidentiary hearing in late 2004. Although Rule 60(b)(6) relief had already been granted, Master Closuit allowed both parties to present evidence about whether such relief was appropriate under the circumstances. In January 2005 Master Closuit submitted her findings of fact and recommendations to the superior court. She found sufficient evidence to vacate under Rule 60(b)(6) the portion of the parties' dissolution decree that adopted their property division agreement and recommended that the parties' assets be redistributed as provided in a spreadsheet she attached to her recommendation. On June 15, 2005 the superior court issued an order adopting Master Closuit's findings and recommendations. The court distributed this order to the parties on June 22.

On November 17, 2005 the superior court distributed various Qualified Domestic Relations Orders (QDROs) relating to Richard's retirement accounts and issued a document titled "Final Judgment" granting Boggs $79,806.01.

Richard appeals the superior court's November 17, 2005 judgment. He filed his notice of appeal with this court on November 23, 2005. Boggs then moved to dismiss Richard's appeal as untimely; an individual justice of this court denied her motion to dismiss. We allowed Boggs to raise the issue of the appeal's timeliness in her appellee's brief.

## III.  DISCUSSION

### A.  Standard of Review

Richard raises four main arguments on appeal. He challenges the court's decision to vacate the portion of the parties' dissolution decree that adopted their property division agreement under Rule 60(b)(6) because: (1) the requisite "extraordinary circumstances" do not exist; (2) relief under that rule is unavailable if any other Rule 60(b) clause applies, and Boggs's claim falls under Rule 60(b)(1) or Rule 60(b)(3); and (3) setting aside the portion of the parties' dissolution decree that adopted their property division agreement will cause him undue prejudice. Richard also argues that the superior court erred by issuing QDROs that treat his retirement accounts as marital property because the parties waived their rights to each other's retirement accounts.

■■■ We review for abuse of discretion the superior court's order reopening the parties' dissolution decree under Rule 60(b)(6).[3] "[R]elief from a judgment is addressed to the sound discretion of the trial court and [the] court's ruling will not be disturbed except upon a showing of abuse of discretion."[4] An abuse of discretion occurs when we are left with the definite and firm conviction on the whole record that the judge had made a mistake.[5]

### B.  Richard's Appeal Is Timely.

■■ On June 15, 2005 the superior court issued an order that adopted Master Closuit's findings and recommendations, including her recommendation that the portion of the parties' prior dissolution decree that adopted their property division agreement be vacated under Rule 60(b)(6) and that the parties' assets be valued and distributed as provided in Master Closuit's findings. Boggs argues that because the superior court's June

---

**3.** *Alaska Truck Transp., Inc. v. Inter–Alaska Credit Serv., Inc.,* 397 P.2d 618, 619–20 (Alaska 1964).

**4.** *Id.; see also Morris v. Morris,* 908 P.2d 425, 427 (Alaska 1995).

**5.** *Juelfs v. Gough,* 41 P.3d 593, 596 (Alaska 2002) (quotation omitted).

15 order "resolved all issues" in the case and "ordered [Richard] to make payment to equalize the property division," it was a final judgment for purposes of appeal. Boggs contends that, per Alaska Rule of Appellate Procedure 204(a)(1), the time for appeal began to run when the order was distributed to the parties on June 22. Because Richard filed his appeal more than thirty days after June 22, Boggs argues that the appeal is untimely.

Richard responds that the June 15 order was not a final judgment because Master Closuit's underlying findings contained unresolved issues. He thus observes that Master Closuit was unable to resolve the question whether Richard's military pension should be valued at the parties' separation, as is the practice in Alaska, or whether federal law requires his pension to be valued at the date of the divorce. Richard contends that the "division of the three retirement accounts was not decided" until the superior court distributed its QDROs on November 17, 2005. Richard asserts that the final judgment for purposes of appeal was the document titled "Final Judgment" that the superior court entered in November with the QDROs.

Appellate Rule 204(a)(1) requires a litigant to file a notice of appeal within thirty days from the date of the judgment appealed from. This time limit is not jurisdictional, and may be relaxed to avoid injustice.[6] The judgment referred to in Appellate Rule 204(a)(1) is the judgment that, per Civil Rule 58, must be set forth on a separate document and that is to be entered after the court makes its decision.[7] This separate document provision in Civil Rule 58 was added in 1983 to "prevent any uncertainty concerning the

date a judgment becomes final and effective, for the purposes of determining when the time limitations for post verdict motions and appeals begins to run."[8] To determine whether a decision is a final judgment that triggers the time limit for an appeal, "the reviewing court should look to the substance and effect, rather than form, of the rendering court's judgment."[9] "A 'final' judgment is one that disposes of the entire case and ends the litigation on the merits."[10]

Because Master Closuit left open the question whether Richard's military pension should be valued at separation or divorce, the superior court's June 15 order that adopted Master Closuit's recommendations did not dispose of the entire case. That open question was not resolved until the superior court distributed its QDROs on November 17. On that same day, the court also distributed a separate "Final Judgment" that complied with the requirements of Civil Rule 58. This step would have been redundant and unnecessary if the superior court's June 15 order had been the final judgment. Because the Rule 204(a)(1) clock did not begin to run until the superior court distributed its final judgment on November 17, 2005, Richard's appeal is timely.

**C. The Superior Court Did Not Abuse Its Discretion when It Vacated the Portion of the Parties' Dissolution Decree that Adopted the Property Division Agreement Under Rule 60(b)(6).**

Rule 60(b) permits a court to relieve a party from an unjust final judgment.[11] The superior court granted Boggs's motion to reopen the parties' dissolution decree under

---

6. *In re Adoption of Erin G.*, 140 P.3d 886, 889 (Alaska 2006) (citing *Isaacson Structural Steel Co., Div. of Isaacson Corp. v. Armco Steel Corp.*, 640 P.2d 812, 815 n. 8 (Alaska 1982) (holding that requirement of timely notice of appeal is not jurisdictional and can be relaxed to avoid surprise or injustice)).

7. *Schneider v. Pay'N Save Corp.*, 723 P.2d 619, 622–23 (Alaska 1986) (holding that formal judgment entered on separate document triggered appeal process, even though summary judgment was awarded much earlier).

8. *Id.* (quotation omitted).

9. *Denali Fed. Credit Union v. Lange*, 924 P.2d 429, 431 (Alaska 1996) (citations omitted).

10. *Mattfield v. Mattfield*, 133 P.3d 667, 673 (Alaska 2006) (citations omitted).

11. *Lacher v. Lacher*, 993 P.2d 413, 418 (Alaska 1999) (citations omitted) (holding divorce decree properly set aside because it failed to dispose of substantial items of marital property).

Rule 60(b)(6). It also adopted Master Closuit's January 4, 2005 findings of fact and recommendations, including Master Closuit's finding that there was a sufficient evidentiary basis for Rule 60(b)(6) relief to Boggs.

### 1. The superior court did not abuse its discretion when it ruled that extraordinary circumstances exist.

In *Schofield v. Schofield*,[12] we listed four factors that may establish "extraordinary circumstances" that justify relief from a dissolution decree under Rule 60(b)(6):

> (1) the fundamental, underlying assumption of the dissolution agreement [has] been destroyed; (2) the parties' property division was poorly thought out; (3) the property division was reached without the benefit of counsel; and (4) the [asset in controversy] was the parties' principal asset.[13]

As we have previously recognized, we have never held that all four factors must be present for relief under Rule 60(b)(6).[14] Instead, we view these four factors as "instantiations of the equitable factors required to overcome the principle that, at some point, 'litigation [must] be brought to an end.' "[15]

■ Master Closuit found that extraordinary circumstances exist in this case because

> the fundamental underlying assumptions of the parties did not come to pass,[16] the division of the assets was clearly inequitable[,] the parties failed to list many of [their] assets, the marital residence is the largest asset of the parties and was not properly valued, and the parties had very limited contact and advice from attorneys before entering into their agreements.

The superior court adopted this finding in its June 15 order. Richard argues that none of the four *Schofield* factors is present and that the superior court therefore abused its discretion when it determined that extraordinary circumstances exist. We disagree.

■ Richard first argues that no fundamental, underlying assumptions of the parties' property division agreement have been destroyed. He contends that his "fortuitous change in employment post decree" and Boggs's "subjective disappointment" with his level of communication are not "extraordinary circumstances" that justify relief under Rule 60(b)(6). But extraordinary circumstances exist where the equity of a property division agreement is destroyed by the parties' mutual mistake regarding one of their agreement's fundamental, underlying assumptions.[17] In *Williams v. Crawford*, the parties based their property division agreement on their mutually mistaken belief that the wife would be eligible to receive the husband's pension survivorship benefits.[18] We held that those were extraordinary circumstances under Rule 60(b)(6) because the wife's eligibility for the husband's survivorship benefits was one of the fundamental assumptions underlying their property division.[19]

■ The parties here based their agreement to give Richard outright ownership of their marital house on the assumption that if they had divided their property equally Richard would need to mortgage the house and thereby place himself in danger of losing it to a third-party lender. This assumption was mistaken. Because their property division agreement did not call for Richard to buy out Boggs's interest in the house, Richard did

---

**12.** *Schofield v. Schofield*, 777 P.2d 197, 202 (Alaska 1989).

**13.** *Lowe v. Lowe*, 817 P.2d 453, 458–59 (Alaska 1991) (quoting *Schofield*, 777 P.2d at 202).

**14.** *Williams v. Crawford*, 982 P.2d 250, 255–56 (Alaska 1999) (citation omitted).

**15.** *Clauson v. Clauson*, 831 P.2d 1257, 1261 (Alaska 1992) (quoting *Lowe*, 817 P.2d at 459).

**16.** Master Closuit explained that the fundamental underlying assumptions of the parties' agree-

ments did not come to pass because "[Richard] was unable and unwilling to openly and freely communicate with [Boggs] even regarding the children and his income earning capacity proved to be neither uncertain nor less than adequate to pay [Boggs] an equitable share of the marital estate."

**17.** *Williams*, 982 P.2d at 255.

**18.** *Williams v. Crawford*, 982 P.2d 250, 255 (Alaska 1999).

**19.** *Id.* at 256.

not need to obtain a commercial mortgage that he might not have been able to service. Instead, Richard could have simply issued a note payable to Boggs to secure his obligation for the property division. This would have avoided any danger of losing the house altogether. The parties did not face an inherent risk of losing the house that they built for their children. The equity of the parties' agreement was destroyed by their mutual mistake regarding this fundamental, underlying assumption.

■ Furthermore, the parties' property division agreement was poorly thought out because it failed to dispose of substantial items of marital property.[20] The parties' property division agreement allocated between $187,032 and $199,147 of their marital estate but did not include at least $17,373 of marital assets and $963 of marital debts. Given that the parties' poorly thought-out agreement was reached without the benefit of counsel, disposed of the parties' principal asset[21] (their marital home), and was inequitable because the parties were mutually mistaken regarding one of the agreement's fundamental, underlying assumptions, we cannot say that the superior court abused its discretion in ruling that Boggs's claim for relief met the standards of Rule 60(b)(6).

### 2. Boggs's claim does not fall under any other clause of Rule 60(b).

A party may only obtain Rule 60(b)(6) relief if no other Rule 60(b) clause applies.[22] Richard argues that Rule 60(b)(6) relief is unavailable to Boggs because her claim falls under either Rule 60(b)(1) or Rule 60(b)(3).

■ Rule 60(b)(1) permits the court to relieve a party from a judgment for "mistake, inadvertence, surprise or excusable neglect." Richard argues that Boggs's Rule 60(b)(6) motion falls under clause (1) because it is based on Boggs's "mistake about Keith being able to financially afford the house." Boggs responds by arguing that her motion does not fall under Rule 60(b)(1) because the mistake at issue here was a mutual mistake and not Boggs's unilateral mistake; her claim therefore falls under Rule 60(b)(6).

We have stated that

Alaska case law does not clearly pinpoint which claims for relief are properly cognizable under Rule 60(b)(1). However, it appears that when a party is seeking relief due to the movant's mistake or neglect the claim falls under Rule 60(b)(1); but when the parties are mutually mistaken the claim falls under Rule 60(b)(6).[23]

As Boggs observes, the language of the agreement indicates that it represented their mutually held beliefs. The parties' belief that Richard needed to mortgage their home if their property was divided equally was therefore a mutual mistake. The superior court did not abuse its discretion by ruling that Rule 60(b)(1) does not apply.

■ Rule 60(b)(3) permits a court to relieve a party from a judgment for fraud, misrepresentation, or other misconduct of an adverse party. Richard's theory for arguing that Boggs's claim falls under Rule 60(b)(3) is that "if [Boggs's] claim is that she was pressured (or subjectively felt coerced) to sign the Dissolution Agreement to maintain good communication with Keith about the children[ ], she is asserting a Rule 60(b)(3) claim." But Boggs has never claimed that she was pressured or felt coerced to sign the dissolution agreement. In fact, Boggs points out that Master Closuit specifically found that "[Richard] never pressured [Boggs] to draft or prepare or sign the amendment [to the] agreement." We are therefore unper-

---

20. See Lacher, 993 P.2d at 419–20.

21. See Foster v. Foster, 684 P.2d 869, 871–72 (Alaska 1984) (holding that poorly thought-out property division based on assumption parties would continue to live in marital home after dissolution was properly set aside when that assumption proved unworkable because underlying assumption of property division was destroyed, division was reached without benefit of counsel, and marital residence was principal asset).

22. Lacher, 993 P.2d at 419.

23. Williams, 982 P.2d at 255 (citations omitted) (holding that claim for relief based on parties' mutual misunderstanding regarding wife's ineligibility for survivorship benefits falls under Rule 60(b)(6)).

suaded that Boggs's claim falls under Rule 60(b)(3).

### 3. Richard did not suffer undue prejudice from the superior court's grant of Rule 60(b)(6) relief.

Richard contends that the superior court abused its discretion when it failed to consider the prejudice to him when it decided Boggs's Rule 60(b)(6) motion. He asserts that he was prejudiced in three ways. First, he argues that he was prejudiced when the superior court revalued the parties' house at its fall 2004 value, even though the parties agreed that the house would be valued at the date of separation (April 2002). Second, he argues that he was prejudiced when the superior court ordered him to split with Boggs $12,000 of income "he earned post separation." Third, he argues that he was prejudiced when the superior court ordered him to split his pension with Boggs despite the parties' reciprocal waiver of rights to each others' retirement accounts.

In deciding Rule 60(b)(6) motions, courts give consideration to the following factors: "the prejudice, if any, to the non-moving party if relief from judgment is granted, whether any intervening equities make the granting of relief inappropriate, and any other circumstances relevant to consideration of the equities of the case." [24] Courts must balance "the interest in the finality of judgments against the interest in granting relief from judgment when justice so requires." [25] In doing so, courts should liberally construe Rule 60(b)(6) "to do justice where extraordinary circumstances demand it." [26]

■■■ Richard has not suffered undue prejudice. Contrary to Richard's contention, the superior court did not revalue the parties' house at its fall 2004 value; the court established the proper value of the house as of the time of the parties' April 2002 separation. Furthermore, Richard's pension and the $12,000 of income he received post-separation were marital property. The prejudice that Richard allegedly suffered was therefore

caused by a series of superior court decisions that stripped him of the windfall he received from the parties' poorly thought-out property division agreement. Because Richard presented no evidence that he would suffer unfair prejudice if the portion of the parties' dissolution decree that adopted their property division is vacated, the superior court did not abuse its discretion when it granted Boggs's Rule 60(b)(6) motion.

### D. The Parties' Reciprocal Waiver of Rights Is No Longer Operative.

■■■ Finally, Richard argues that the superior court committed clear error when it issued QDROs that classified Richard's retirement accounts as marital property despite the parties' reciprocal waiver of rights to each others' retirement accounts. Richard points to no authority to support his contention that the parties' original waiver of rights survived the grant of Rule 60(b)(6) relief. Because the court vacated the parties' entire property division agreement, the original reciprocal waiver of rights is no longer operative.

## IV. CONCLUSION

The superior court did not abuse its discretion by granting Boggs's motion for Rule 60(b)(6) relief. We therefore AFFIRM.

---

24. *Norman v. Nichiro Gyogyo Kaisha, Ltd.,* 761 P.2d 713, 717 (Alaska 1988).

25. *Id.*

26. *Id.* at 715.