Janice Park HUSSEINI, Appellant,

v.

Jalal Keith HUSSEINI, Appellee.

No. S–13299.

Supreme Court of Alaska.

May 7, 2010.

Janice Park Husseini, Anchorage, pro se.
No appearance by Appellee.

Before: CARPENETI, Chief Justice,
FABE, WINFREE, and CHRISTEN,
Justices.

## OPINION

PER CURIAM.

## I.  INTRODUCTION

Janice and Jalal Husseini are in the midst of a divorce proceeding.  In February 2008 the trial court bifurcated the parties' divorce over Janice's objection, granting the divorce but reserving all issues of equitable distribution of property.  Before the full trial on property issues, the court issued an interim order allowing Janice thirty days to refinance the parties' marital home in her name if she wanted to keep it.  When she was unable to do so, the court issued an order for the sale of the residence prior to trial.  Although Janice argued that the sale of the residence could cause a loss for the parties, the trial court accepted Jalal's representation that the equity realized from the sale could be used to pay other ongoing marital debts and refused to stay its order for the sale of the residence.

The trial court issued several orders, including a writ of assistance to physically remove Janice from the residence and a clerk's deed conveying her interest in the property to Jalal so that a quitclaim deed could be delivered for the sale. Jalal and third-party buyers closed on the sale of the home in October 2008. Janice filed a lis pendens to prevent the buyers from recording the deed after closing. The trial court ordered that the lis pendens was null and void, but stayed that order pending the resolution of this appeal. On appeal, Janice challenges both of the trial court's orders implementing the sale of the marital home prior to a final judgment on property division and the bifurcation of the divorce.

Although Janice's appeal of the bifurcation is untimely, we review it on the merits and conclude that the decision to bifurcate was harmless error. Due to the lack of both factual findings and a statement of legal reasoning from the court below, we are unable to determine whether the trial court abused its discretion in ordering the sale of the residence prior to the final property distribution. Accordingly, we vacate the trial court's orders for the sale of the marital home and for a clerk's deed and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Janice Park Husseini and Jalal Keith Husseini were married in Las Vegas, Nevada in April 2000. On August 27, 2007, Jalal filed a complaint seeking dissolution of the marriage and division of the parties' property. At the time of the divorce proceedings before Superior Court Judge Jack Smith, the Husseinis were residents of Anchorage, Alaska. They have no children together.

After the parties' separation, Janice occupied the marital home, and Jalal was ordered not to return because of tension between the parties. At a hearing on January 15, 2008, the court ordered Jalal to pay the mortgage and utilities until the trial date in February in lieu of providing interim spousal support.[1] In her trial brief, Janice expressed a desire to remain in the marital home and requested ninety days to "investigate the possibility" of refinancing.

During a hearing on February 1, 2008, the trial court issued an interim order giving Janice thirty days to refinance the marital home in her own name. The order further stated that if Janice did not obtain approval to refinance, a realtor would be selected and the house would be listed for sale within seven days. The trial court also decided sua sponte, over Janice's objection, to bifurcate the divorce proceedings from outstanding issues of equitable distribution of property. A decree of divorce was granted on February 18, 2008 that dissolved the legal marriage between the Husseinis.

When Janice was unable to refinance the marital home in her own name within the specified time period, the court entered an order appointing a realtor to list and sell the residence. Janice sought to stay the sale, arguing there was likely little or no equity in the residence and offering to assume the existing mortgage and provide Jalal with a credit for whatever equity the parties had accrued in the residence. Jalal countered that there was approximately five to ten thousand dollars of equity in the residence that could be used to pay other marital bills, that the sale of the residence would relieve the parties of the obligation to make mortgage payments, and that the mortgage payments already in arrears could be rolled into the sale. The court refused to stay its order to sell the residence. In July 2008, after the appointed realtor informed the court that there were interested buyers who were likely to qualify for financing, the trial court signed a writ of assistance providing Jalal with possession of the residence and ejecting Janice. Janice was removed from the residence by the police on August 5, 2008.

After considering Janice's opposition to the sale of the residence, the trial court granted Jalal's motion for a clerk's deed that transferred "any and all interest of defendant Janice L. Husseini [sic] in the parties' mari-

---

**1.** On March 19 the trial court issued a new order requiring that Jalal pay the mortgage and any costs associated with the sale of the residence.

tal residence" to Jalal by quitclaim deed, and the clerk subsequently executed a deed conveying the residence to Jalal. A sale of the residence closed that same day, October 2, 2008. The trial court made no findings of fact related to the amount received from the sale.

Because of a mix up with the buyers' bank, the deed was not immediately recorded. When the buyers later attempted to record, Janice had already filed a lis pendens providing constructive notice of her claim of half-ownership of the residence, effectively blocking recordation of the deed. At trial on October 13, 2008, Jalal's attorney requested that the lis pendens be declared null and void. The trial court agreed that because the sale was complete before the lis pendens was entered, it did not provide the buyers with notice of pending litigation.[2] This order was stayed for twenty-four hours in order to give Janice the opportunity to appeal.

Janice entered notice of the current appeal on October 14, 2008 and further amended her points on appeal in January 2009. She appeals issues relating to the forced sale of the residence as well as the bifurcation of the divorce. The trial court has stayed its order vacating the lis pendens pending resolution of this appeal and has allowed Janice to move back into the residence. Jalal did not participate in this appeal.

### III. STANDARD OF REVIEW

■■■ We review for abuse of discretion the superior court's decision to bifurcate the divorce proceeding[3] and issue a clerk's deed or other order for the sale of marital proper-

ty during a divorce proceeding.[4] An abuse of discretion is found when the court is "left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[5] We consider whether an order of the superior court is appealable de novo.[6]

### IV. DISCUSSION

#### A. Janice Failed To Appeal the Bifurcation of the Divorce Proceedings in a Timely Manner, and the Decision to Bifurcate Was Harmless Error.

■■■ Janice argues that the trial court's bifurcation order that allowed the legal marriage to be dissolved while reserving all issues of equitable division of the marital estate failed to meet the requirements listed in AS 25.24.155. Janice contends that "[n]o finding of any kind was entered by the court [in] reference to the benefits of bifurcation . . . ," which amounts to an abuse of discretion. For an issue of property division to be reserved, AS 25.24.155 requires that the court make a finding "that the interests of a party opposing the motion will not be jeopardized by the delay or reservation."[7]

We begin our analysis with the threshold question whether Janice's appeal of the bifurcation is timely. Although Janice objected to the bifurcation of the divorce during the February 1, 2008 hearing, she did not appeal the divorce decree itself. Other than her initial objection, there was no indication that Janice intended to challenge the bifurcation until

---

2. *See* AS 09.45.940.

3. *See Sever v. Alaska Pulp Corp.,* 931 P.2d 354, 361 n. 10 (Alaska 1996) ("Bifurcation of a trial is generally within the discretion of a trial court, and a ruling on this issue will not be reversed absent an abuse of that discretion.").

4. *See Watega v. Watega,* 143 P.3d 658, 663 (Alaska 2006) ("We review a superior court's issuance of an order permitting the sale of property using the same abuse of discretion standard that we employ when reviewing other superior court orders.").

5. *Id.* (quoting *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378–79 (Alaska 1982)).

6. *Mattfield v. Mattfield,* 133 P.3d 667, 674 n. 5 (Alaska 2006).

7. The text of AS 25.24.155(a) states:

The court may not delay or reserve a custody decision under AS 25.24.150(f) or an issue of property division under AS 25.24.160(c) unless (1) each party, and the guardian ad litem if one has been appointed under AS 25.24.310, expressly agrees on the record to the delay or reservation; or (2) a party who moves for an order of delay or reservation shows good cause and the court finds that the interests of a party opposing the motion will not be jeopardized by the delay or reservation.

she filed a motion to amend her points on appeal on January 30, 2009.

To determine whether Janice's appeal of the bifurcation was timely, we must first consider whether a divorce decree dissolving a legal marriage is a final and appealable order "that disposes of the entire case and ends the litigation on the merits"[8] when associated issues of equitable division have been reserved.[9] If the divorce decree was final and appealable, the current appeal is untimely, as Janice failed to file a notice of appeal within the thirty-day window available under Alaska Appellate Rule 204(a)(1).[10]

■ Alaska Statute 25.24.155 authorizes trial courts to reserve custody decisions or issues of property division, thus creating a mechanism to allow the final legal resolution of some issues before others in a divorce proceeding. When the resolved issue is the dissolution of the legal marriage itself, parties have a strong interest in finality, rather than having the issue of their marital status reopened at some undetermined future date. This finality provides the parties with certainty as to their marital status for purposes such as tax filings and remarriage because the divorce decree serves as proof of the legal termination of the marriage and the date on which termination occurred.[11] Further, once a divorce decree is issued, there are no further steps for a court to take to dissolve the legal marriage—the union between the parties has been permanently broken. We therefore conclude that the divorce decree issued on February 18, 2008 dissolving the legal marriage between the Husseinis

was final and appealable. This appeal is thus untimely.

■ Alaska Appellate Rule 521 provides this court with some flexibility to relax or dispense with the Rules of Appellate Procedure "where a strict adherence to them will work surprise or injustice."[12] We recognize that the rule that a divorce decree dissolving a legal marriage is a final judgment, even when some issues have been reserved, had not been announced prior to this decision. Because it would be unjust and unrealistic to expect a pro se litigant to have anticipated this ruling in order to make a timely appeal, we go on to consider the merits of Janice's claim.

■ We begin our analysis by agreeing with Janice's contention that it was error for the trial court to reserve issues of equitable distribution of marital property over her stated objection without making any findings that her interests would "not be jeopardized by the delay or reservation."[13] The trial court failed to make the findings required by statute, and there is no indication in the record that Jalal moved for bifurcation and demonstrated good cause. Because bifurcation cannot be granted without a showing of good cause by the moving party and without a finding that the opposing party's interests would not be jeopardized, we hold that the superior court's decision to bifurcate the divorce proceedings was an abuse of discretion.

■ Our next consideration concerns whether this error harmed or prejudiced Janice. Because the bifurcation in this case

---

**8.** *Richard v. Boggs,* 162 P.3d 629, 633 (Alaska 2007) (internal quotation marks omitted).

**9.** Janice's in-court objection was to the court's order to bifurcate, which is not a final and appealable award. To obtain appellate review of the order to bifurcate, rather than the divorce decree, Janice was required to petition this court for review within ten days of notice of the order. Alaska R.App. P. 403(a)(1)(A).

**10.** The clerk's certificate on the decree of divorce indicates that it was mailed to the parties on February 18, 2008. Janice filed her current appeal on October 14, 2008 and later amended her points on appeal to challenge the bifurcation in January 2009. Even giving Janice the benefit of the date of the initial notice of appeal, this appeal

was filed almost seven months after the expiration of the thirty-day time period for appeal.

**11.** *See Estate of Burford v. Burford,* 935 P.2d 943, 954 (Colo.1997) (describing practical reasons that a divorce decree is a final and appealable judgment).

**12.** In deciding whether to relax the rules, the court balances several considerations: "the right to appellate review, the willfulness and extent of the rules violation and the possible injustice that might result from dismissal." *Estate of Smith v. State,* 635 P.2d 465, 467 (Alaska 1981) (quoting *Ballard v. Stich,* 628 P.2d 918, 921 (Alaska 1981)).

**13.** AS 25.24.155(a)(2).

only resolved the issue of the legal marriage, there was no showing that the early dissolution of the marriage worked any harm by impacting the outstanding property issues. Janice's brief explains that her objection to the bifurcation was based upon her allegation that "Jalal had been wasting assets and had refused to obey court orders regarding mortgage payments and discovery." Janice does not explain how the early dissolution of the legal marriage impacted either of these outstanding issues, as her challenge seems more closely related to the trial court's interim order granting Jalal the "sole and exclusive authority to manage and operate" the Husseinis' business, Alaska Water Systems, during the pendency of the divorce proceeding. Further, vacating the dissolution of the marriage and declaring the parties to again be married seems an inappropriate form of relief at this time.[14] Accordingly, we conclude that while the trial court erroneously granted the bifurcation in this case, this error was harmless.

### B. We Review the Trial Court's Order Requiring the Sale of the Marital Home Prior to the Final Property Division Even Though It Is Not an Appealable Final Judgment.

██ Janice also argues that it was error to order the execution of the clerk's deed that conveyed her interest in the marital home to Jalal to allow the sale of the residence and in declaring her lis pendens null and void. After considering Janice's arguments, we conclude that her intended challenge is most appropriately made to the superior court's order requiring the sale of the marital home because she is seeking to prevent the forced sale of the residence.

██ Because there has been no final property division in this case, the trial court has entered no final judgment with regard to the outstanding property issues reserved by the earlier bifurcation. As discussed previously, an order must constitute a final judgment, such that it "disposes of the entire case and ends the litigation on its merits,"[15] for this court to review it on appeal.[16] As a result of the bifurcation, there is now a final judgment on the dissolution of the legal marriage but no final judgment on any of the property division issues. Neither the order requiring that the residence be sold nor the order for a clerk's deed constitute such a final judgment.

We recognize that issues surrounding the forced sale of the residence have been fully briefed by Janice and that the superior court's offer to stay its order vacating the lis pendens if she "appealed" within twenty-four hours likely led her to believe she could file a direct appeal to this court. Although Janice should have exercised her interlocutory appeal rights in March within ten days of the trial court's order appointing a realtor to list and sell the home,[17] she did file several motions to stay the sale with the lower court and may not have considered the decision to sell sufficiently final to warrant interlocutory appeal until the clerk's deed was issued. Janice's status as a pro se litigant and the importance of addressing the forced sale of the home before it becomes unreviewable as a practical matter persuade us to consider this issue on the merits. We therefore decide, sua sponte, to treat this "purported appeal as a petition for review and [will decide] the questions presented to the same extent and with the same effect as on appeal,"[18] to avoid causing additional delays that would result in hardship or injustice for the parties involved.

### C. The Trial Court's Order Requiring the Sale of the Marital Home Prior to the Final Property Decision Is Not Supported by Adequate Findings.

██ Janice argues that it was error to order the execution of the clerk's deed that

---

14. During oral argument, Janice conceded that Jalal has remarried in the time since the divorce decree was granted.

15. *Richard v. Boggs,* 162 P.3d 629, 633 (Alaska 2007) (internal quotation marks omitted).

16. Alaska R.App. P. 202.

17. *See* Alaska R.App. P. 403(a)(1)(A).

18. *Leege v. Strand,* 384 P.2d 665, 666–67 (Alaska 1963).

effectuated the court's earlier order to sell the marital home. Janice contends that the trial court did not have sufficient evidence to order the sale and that there was no support for Jalal's claim that there was substantial equity in the residence that could be used to pay marital debts and prevent other losses.

Alaska Statute 25.24.140(b)(6) provides that "[d]uring the pendency of the [divorce] action, upon application, a spouse is entitled to necessary protective orders, including orders ... prohibiting a spouse from disposing of the property of either spouse or marital property without the permission of the other spouse or a court order." As our decision in *Watega v. Watega* explained, this provision "explicitly contemplates court authority to order sales of property while divorce proceedings are ongoing...." [19] Although *Watega* leaves no doubt that trial courts are empowered to exercise their discretion to dispose of marital assets before the final property distribution, this discretion is not unlimited and should only be exercised in exceptional circumstances. *Watega* provides only one example of a pressing reason that would justify requiring the sale of part of the marital estate: "prevention of waste of marital assets." [20] As the decision in *Watega* implied, a sale of property should not be ordered absent a pressing reason, such as the preservation of marital assets or significant gains to the marital estate.

In this case, the trial court suggested that it was seeking to avoid the waste associated with having one of the parties continue to own and maintain a residence that neither party could afford to refinance. It is unclear from the record before us whether foreclosure was imminent, but the trial court listed avoiding foreclosure and bankruptcy as two of the factors in favor of selling the house, particularly in light of the large mortgage debt. Janice continued to object to the sale and argued, through her lawyer at the time, that "the sale price after payment of the mortgage, the real estate commission, and other things" would prevent the parties from realizing any significant proceeds from the

sale. The trial court made no findings of fact demonstrating that this sale would prevent loss to the marital estate and did not ask the parties to submit relevant evidence before ordering the sale of the residence. Because the trial court made no findings and did not set out the calculations that led it to conclude that an interim sale was necessary, we can only guess as to why the court concluded that the pre-judgment sale of the residence would benefit the parties. Without the benefit of such findings, we cannot determine whether the exceptional circumstances required by the *Watega* decision were present in this case.

We take this opportunity to elaborate on our holding in *Watega*. We "leave to the discretion of the trial court the varying circumstances that may justify the sale of the marital assets and the utilization of the proceeds prior to the divorce judgment." [21] But we clarify that the trial court's decision to order the sale of a marital asset prior to the final property decision must be accompanied by factual findings that demonstrate the exceptional circumstances justifying such a sale and that specifically articulate the grounds upon which the order for sale is based.

Given the lack of such findings in the case at hand and our inability to divine the specific factors that the trial court used to justify the order to sell the Husseinis' marital home, we are unable to determine whether the trial court abused its discretion. Accordingly, we vacate the trial court's order requiring the sale of the marital home and the later clerk's deed conveying Janice's interest in the residence to Jalal and remand for further proceedings consistent with this opinion. A new order for the interim sale of the residence can be issued by the trial court if there is sufficient evidence to support a finding of exceptional circumstances. Because of the time that has elapsed between the trial court's interim order and this decision, we realize that the trial date on the property division may be in the near future. The trial court has the discretion to take up questions

---

**19.** 143 P.3d 658, 662 (Alaska 2006).

**20.** *Id.*

**21.** *Id.* at 663 (quoting *Randazzo v. Randazzo*, 184 N.J. 101, 875 A.2d 916, 924 (2005)).

surrounding the sale of the residence in the context of the final equitable distribution of property.

## V. CONCLUSION

For the reasons stated above, the trial court's bifurcation of the divorce proceedings is harmless error, but the trial court's order that the marital home be sold prior to the final property division is VACATED and REMANDED for further proceedings consistent with this opinion.