*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JENNIFER L., | ) | |
| | ) | Supreme Court No. S-15646 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 4AK-00001/ |
| v. | ) | 00002/00003 CN |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| DEPARTMENT OF HEALTH AND | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 7043 - August 28, 2015 |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Aniak, Douglas Blankenship, Judge.

Appearances: William T. Montgomery, Assistant Public Advocate, Bethel, and Richard Allen, Public Advocate, Anchorage, for Appellant. Janell Hafner, Assistant Attorney General, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.     INTRODUCTION

The State's Office of Children's Services (OCS) took three minor children into emergency custody, then sought a court order granting OCS temporary custody,

asserting there was probable cause to find the children in need of aid. A standing master determined that no probable cause existed and recommended that the three children be returned to their mother's custody. The State objected to the master's recommendation, and over three weeks later the superior court reviewed and rejected it, finding that there was probable cause. The mother filed this appeal, asking us to hold that masters have the authority to return children to their homes without judicial review. Before the State filed its brief, the superior court dismissed the underlying case, making this appeal moot.

We apply the public interest exception to the mootness doctrine and affirm the superior court's ruling. However, we also acknowledge the importance of avoiding procedural delay in returning children home, and we refer this issue to the court's Advisory Committee on the Child In Need of Aid (CINA) Rules to consider how the process may be improved.

## II.    FACTS AND PROCEEDINGS

Jennifer and her husband Adam are the parents of three minor children: a daughter, Andrea, and two younger boys.[1] The children are Indian children as defined in the Indian Child Welfare Act (ICWA);[2] their tribal affiliation is with the Village of Lower Kalskag.

OCS was involved in the children's lives for a decade, largely because of the parents' problems with alcohol. But the events leading up to this appeal mark the first time OCS removed the children from their home. OCS did so after it received a

---

[1]    We use pseudonyms to protect the family's privacy.

[2]    *See* 25 U.S.C. § 1903(4) (2012) (" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe").

report in late May 2014 that J.K., a 31-year-old man, punched the youngest boy while drinking alcohol with Jennifer and her daughter Andrea, then 16.

OCS assigned the investigation to a social worker, who traveled to Lower Kalskag in early June, visited the family's home, and found both parents under the influence of alcohol. He interviewed the parents, two of the children, and another relative who was also an ICWA social worker. The OCS employee learned that J.K. was alleged to be a sex offender, that J.K. was currently in a sexual relationship with Andrea, that her parents often allowed J.K. to spend the night with her in their home, and that Andrea was pregnant with J.K.'s child.

OCS removed the three children on June 11, and the next day it filed a petition for temporary custody and for an adjudication that the children were in need of aid. The superior court referred the matter to a standing master. The master set a temporary custody hearing for June 14, heard evidence from a number of witnesses, then continued the hearing to June 18 "to allow [Adam's] attorney to be present." The master authorized OCS to retain temporary custody of the children in the meantime. At the June 18 hearing the parties presented no additional evidence, and on June 26 the master issued a written order, finding no probable cause to believe that any of the three children were children in need of aid. The master found that there was insufficient evidence to determine the nature of J.K.'s alleged sexual offense, that Andrea's relationship with J.K. was not cause for removal since she was of the age of consent, and that while the parents had made some poor choices, they had not neglected their other children. The master's order concluded that "the State must immediately return the . . . children to [Jennifer and Adam]."

The State did not return the children, but instead filed timely objections to the master's order with the superior court.[3] It was not until July 11 that the superior court put an oral decision on the record rejecting the master's recommendation. In a written decision and order distributed July 14, it also rejected Jennifer's argument that the master's order should have taken effect without judicial review, citing the CINA rules. On the merits of the recommendation, it found there was probable cause to believe that two of the children were children in need of aid pursuant to AS 47.10.011(7)[4] and that all three were children in need of aid pursuant to AS 47.10.011(10).[5] The superior court therefore ordered that temporary custody remain with the State through the adjudication hearing. However, on the State's representations that it would assist the family in developing a safety plan and that J.K. was presently incarcerated, the superior court determined that "removal of the children from the parent's home [was] no longer

---

[3]     As discussed further in this opinion, the master's order for the children's return was "not binding until approved by a superior court judge," making it in effect a recommendation. *See* CINA Rule 4(b)(4); Alaska R. Civ. P. 53(d).

[4]     This subsection reads in part that "if a parent, guardian, or custodian has actual notice that a person has been convicted of a sex offense against a minor within the past 15 years, is registered or required to register as a sex offender under AS 12.63, or is under investigation for a sex offense against a minor, and the parent, guardian, or custodian subsequently allows a child to be left with that person, this conduct constitutes prima facie evidence that the child is at substantial risk of being sexually abused."

[5]     This subsection provides that a child may be found to be a child in need of aid if "the parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child."

necessary to prevent imminent physical damage or harm," and the children were returned home.[6]

On July 29, before there were any further proceedings on removal or termination of parental rights, Jennifer appealed the superior court's temporary custody decision. In her opening brief she takes issue with the superior court procedures on emergency and temporary custody, asking that we "grant[] the master the authority, without approval from the superior court, to order a child returned home" and to "allow a parent to request the superior court to review a master's order removing a child from the home by the end of the next working day." Less than a month after she filed her opening brief, however, the State filed an unopposed motion in the superior court to dismiss its case involving all three children, and the superior court granted the motion in January 2015. The children remain with their parents.

## III. STANDARDS OF REVIEW

"Because it is a matter of judicial policy, mootness presents a question of law."[7] We apply our independent judgment when determining mootness.[8] As for the substantive issues on Jennifer's appeal, we exercise our independent judgment "when interpreting a civil rule" or statute.[9] "We interpret statutes 'according to reason,

---

[6]     *See Matter of J.A.*, 962 P.2d 173, 176 (Alaska 1998) (stating that superior court must consider the "totality of the circumstances" — not just the isolated event that resulted in emergency custody — to determine "whether, at the time of the hearing, probable cause exists to believe that the child is a child in need of aid").

[7]     *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 993-94 (Alaska 2006).

[8]     *Akpik v. State, Office of Mgmt. & Budget*, 115 P.3d 532, 534 (Alaska 2005).

[9]     *S.S.M. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth*
(continued...)

practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[10]

## IV. DISCUSSION

### A. We Treat This Appeal As A Granted Petition For Review.

The State argues that Jennifer cannot appeal a temporary custody order because it is not a "final judgment" reviewable under Alaska Appellate Rule 218(b)[11] and Alaska CINA Rule 21(a).[12] An appealable order "must constitute a final judgment, such that it 'disposes of the entire case and ends the litigation on its merits.' "[13] But in some cases we have decided sua sponte to treat the appeal of a non-final order "as a petition for review and [have decided] the questions presented to the same extent and with the same effect as on appeal."[14]

---

[9](...continued)
*Servs.*, 3 P.3d 342, 344 (Alaska 2000).

[10]     *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (quoting *Native Vill. Of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

[11]     "This rule does not permit an appeal to be taken in any circumstances in which an appeal would not be permitted by [Appellate] Rule 202." *See* Alaska R. App. P. 202(a) ("An appeal may be taken to the supreme court from a final judgment entered by the superior court . . . .").

[12]     "An appeal of a final judgment or order, or a petition for review of an interlocutory order or decision, may be taken subject to Appellate Rule 218 or other appropriate appellate procedures."

[13]     *Husseini v. Husseini*, 230 P.3d 682, 687 (Alaska 2010) (quoting *Richard v. Boggs*, 162 P.3d 629, 633 (Alaska 2007)).

[14]     *Id.* (quoting *Leege v. Strand*, 384 P.2d 665, 666-67 (Alaska 1963)) (internal quotation marks omitted). *See generally* Alaska R. App. P. 402 (providing petitions for review of non-appealable orders or decisions).

We follow that course here rather than deciding the appealability issue. We treat Jennifer's appeal as a granted petition for review[15] and decide the question presented "to the same extent and with the same effect as on appeal."[16]

**B.      This Case Is Moot, But We Review It Under The Public Interest Exception To The Mootness Doctrine.**

CINA proceedings advance in three stages that may occur over the course of many months. First, OCS may take emergency custody of a child, but the superior court must immediately hold a temporary custody hearing at which it determines whether probable cause exists for believing the child is in need of aid.[17] In later proceedings, the court may adjudicate a child in need of aid if it finds by a preponderance of the evidence that the child has been subjected to any of the twelve conditions described in AS 47.10.011.[18] As a final step the court may terminate the parent's rights and responsibilities with respect to the child, freeing the child for adoption or other permanent placement, if it finds by clear and convincing evidence that all the conditions

---

[15]      *See* Alaska R. App. P. 402(b)(4) (stating that a petition for review will be granted if "[t]he issue is one that might otherwise evade review, and an immediate decision of the appellate court is needed for guidance or is otherwise in the public interest").

[16]      *Husseini*, 230 P.3d at 687.

[17]      *See* AS 47.10.142; AS 47.10.990(4) (defining "child in need of aid").

[18]      The only relevant provisions in the instant case were AS 47.10.011(7) (when parent has "actual notice that a person has been convicted of a sex offense against a minor" and leaves child with that person) and AS 47.10.011(10) (when parent is "substantially impaired by the addictive or habitual use of an intoxicant" and that use "has resulted in a substantial risk of harm to the child").

of AS 47.10.088(a) have been met,[19] and, in ICWA cases like this one, if it finds "by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."[20] Jennifer's appeal involves only the first stage — the superior court's probable cause determination for purposes of temporary custody — as the case was dismissed before it went any further.

Dismissal of the case before adjudication or termination also means that Jennifer's appeal of the superior court's probable cause determination is moot. "A claim is moot if it has lost its character as a present, live controversy."[21] "If the party bringing the action would not be entitled to any relief even if it prevails, there is no 'case or controversy' " to decide.[22] As a general rule, a party "may not appeal a judgment in its favor in order to challenge an interlocutory order."[23] A " 'naked desire for vindication'

---

[19]     *See* AS 47.10.088(a) ("(1) the child has been subjected to conduct or conditions described in AS 47.10.011;  (2) the parent . . . has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or . . . has failed, within a reasonable time, to [do so]; and . . . (3) the department has [made] reasonable efforts").

[20]     25 U.S.C. § 1912(f); CINA Rule 18(c)(4).

[21]     *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 994 (Alaska 2006) (quoting *Kleven v. Yukon-Koyukuk Sch. Dist.*, 853 P.2d 518, 523 (Alaska 1993)).

[22]     *Id.*

[23]     *Id.*; *see also Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1168 (Alaska 2002) (holding that union's appeal of "intermediate legal question" was moot after it obtained relief in superior court).

does not save an otherwise dead controversy from mootness."[24]  To survive a mootness challenge, therefore, Jennifer must show that concrete relief would be available to her if we reversed the probable cause determination or that the issue on appeal falls under one of the exceptions to the mootness doctrine.

It is evident that Jennifer will receive no concrete relief if we reverse the probable cause determination, as the children are in her custody and OCS no longer seeks to be involved in the parent-child relationship.  We conclude, however, that the public interest in the legal issue she raises is significant enough to warrant our consideration of this otherwise moot case.

We weigh various considerations when deciding whether to hear a moot appeal under the public interest exception:  "(1) whether the disputed issues are capable of repetition; (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented; and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[25]  The weight we give each of these factors is discretionary, and no one of them is dispositive.[26]

The question of  whether a child should be promptly returned home upon the recommendation of a standing master is a question important to the public interest, and it may arise again.[27]  Resolution of the issue may affect a number of pending and

---

[24]     *Peter A.*, 146 P.3d at 994 (quoting 13A CHARLES ALLAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 3533, at 212 (2d ed. 1984)).

[25]     *See In re Candace A.*, 332 P.3d 578, 579 n.2 (Alaska 2014) (quoting *Peter A.*, 146 P.3d at 996).

[26]     *See Fairbanks Fire Fighters Ass'n*, 48 P.3d at 1168.

[27]     *See, e.g., In re Candace A.*, 332 P.3d at 579 n.2 (noting that "the question of expert qualifications in ICWA cases is important to the public interest"); *Peter A.*, 146 (continued...)

future CINA cases.[28]  And in many of those cases, the superior court will likely proceed with adjudication, mooting the probable cause determination and allowing the question to evade review.[29]  For these reasons we conclude that the public interest exception to the mootness doctrine applies.

### C.    Immediate Review Of Masters' Decisions To Return Children Home Is Necessary To Avoid Unreasonable Delay.

Jennifer argues that the CINA statutes and rules together entrust standing masters with decisions about the placement of children, and masters should therefore have the authority to order children returned home without waiting for judicial review and confirmation.  Underlying Jennifer's argument is the problem of procedural delay.

---

[27](...continued) P.3d at 996 n.30 (noting that interpretation of AS 47.10.011 is important to public interest, particularly "the effect the availability of a non-offending parent willing and able to care for the child may have on the adjudication determination").

[28]    CINA Rule 4(b)(4) provides:

> A master's report is *not binding until approved by a superior court judge* pursuant to Civil Rule 53(d) [defining master's report] and paragraph (f) [discussing objections to master's recommendations] of this rule, except: . . a master may enter orders without further approval of the superior court pursuant to Civil Rule 53(b) and (c), and by paragraph (d) of this rule; and . . . a master's order of removal from the home is effective pending superior court review.

(Emphasis added).  *See also* CINA Rule 4(d). The rule provides nine circumstances in which a master may take actions without further approval by a superior court judge. They do not include the authority to return a child to his or her home.

[29]    *See, e.g.*, *Alyssa B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 165 P.3d 605, 610 (Alaska 2007) (holding that parent's challenge to superior court's probable cause determination was moot in light of court's later decision adjudicating child in need of aid, because court had to make same findings at adjudication stage but subject to higher standard of "preponderance of the evidence").

We agree that the 23-day wait in this case between the master's recommendation and the superior court's order on review of it was unacceptable. The superior court recognized this as well,[30] and the delay appears to have been an aberration.

Jennifer's appeal does, however, highlight an anomaly in the CINA rules' treatment of orders for removal of children from their homes and orders for their return. CINA Rule 4(b)(2)(A) provides that emergency or temporary custody hearings may be referred to a master. CINA Rule 4(b)(4)(B) provides that "a master's order of removal from the home is effective pending superior court review." Under CINA Rule 4(f), "[a] master's order removing a child from the home which is not stayed must be reviewed by the superior court by the end of the next working day if a party so requests." In short, a master may order a child's immediate removal from the home, the order takes effect without judicial review, and the order must be reviewed by the superior court no later than the next day if immediate review is requested. But a master's order returning the child to the home does not receive parallel treatment under the CINA rules; such an order is simply one of those not otherwise mentioned in the rules, "not binding until approved by a superior court judge" as provided by CINA Rule 4(b)(4). The CINA rules are clear on this, and there was thus no error in the superior court's decision that the master's recommendation that the children be returned home was not effective until the court had reviewed it.

We are nonetheless troubled by the rules' tacit acceptance of procedural delay in this context. The CINA statutes identify two complementary goals. Alaska Statute 47.10.005 provides that "[t]he provisions of this chapter shall be liberally construed to . . . achieve the end that a child coming within the jurisdiction of the court

---

[30]     The superior court wrote in its order rejecting the master's recommendation that it would "work closely with the standing masters and staff to ensure more prompt determinations are made in the future."

under this chapter may receive the care, guidance, treatment, and control that will promote [1] the child's welfare and [2] the parent's participation in the upbringing of the child to the fullest extent consistent with the child's best interests."[31] CINA Rule 4(b), by authorizing the master to order a child's immediate removal from the home without further judicial review, promotes the first goal, but perhaps at the expense of the second.[32] And "the 'right to the care and custody of one's own child is a fundamental right recognized by both the federal and state constitutions' "[33] — "one of the most basic

---

[31] *See also* AS 47.05.060 which identifies the purpose of Title 47 as:

[T]o secure for each child the care and guidance, preferably in the child's own home, that will serve the moral, emotional, mental, and physical welfare of the child and the best interests of the community; [and] to preserve and strengthen the child's family ties unless efforts to preserve and strengthen the ties are likely to result in physical or emotional damage to the child, removing the child from the custody of the parents only as a last resort when the child's welfare or safety or the protection of the public cannot be adequately safeguarded without removal.

[32] We note the legislative command in AS 47.10.082 that "[i]n making the dispositional order under AS 47.10.080(c), the court shall keep the health and safety of the child as the court's paramount concern." But the dispositional order *follows* a finding that the child is in need of aid. AS 47.10.080(c) ("If the court finds the child is a child in need of aid, the court shall . . ."). After a CINA finding, the child's health and safety must be "the court's paramount concern." But before such a finding, the statutory scheme does not give different weigh to the goals identified in AS 47.10.005: promoting "the child's welfare and the parent's participation in the upbringing of the child to the fullest extent consistent with the child's best interests."

[33] *Seth D. v. State, Dep't of Health & Soc. Servs., Office of Children Servs.*, 175 P.3d 1222, 1227 (Alaska 2008) (quoting *J.M.R. v. S.T.R.*, 15 P.3d 253, 257 (Alaska 2001)).

of all civil liberties."[34]

Subsections (d) and (e) of AS 47.10.142 set out the procedures governing emergency custody and temporary placement. They contemplate that a temporary custody hearing will occur "immediately, and in no event more than 48 hours after [the court is] notified" that OCS has taken emergency custody of a child.[35] Continuances are allowed, but only "on a showing of good cause" by the parent or guardian.[36] "[R]egardless of whether a continuance is granted," the court must "[a]t the first hearing . . . make a preliminary determination of whether continued placement in the home . . . would be contrary to the welfare of the child"; if it would not, "the court shall return the authority to place the child to the child's parent or guardian pending a temporary custody hearing."[37]

At the temporary custody hearing the court must "determine whether probable cause exists for believing the child to be a child in need of aid"; if probable cause exists, the court "shall order the child committed to the department for temporary placement" or order the child's return to the parents subject to OCS supervision.[38] "If the court finds no probable cause, it shall order the child returned to the custody of the child's parents or guardian."[39]

We read these statutes as contemplating an especially expeditious process,

---

[34]    *Id.* at 1227-28; *see* AS 47.05.065 (delineating parents' "rights and responsibilities relating to the care and control of their child while the child is a minor").

[35]    AS 47.10.142(d).

[36]    *Id.*

[37]    *Id.*

[38]    AS 47.10.142(e).

[39]    *Id.*

one in which the court makes a decision and contemporaneously orders its implementation, regardless of whether the child is committed to OCS's custody or returned to the family home. They do not contemplate what is essentially a two-tiered system for return orders: first a hearing before a master resulting in a master's recommendation, and then, in time, review and final implementation by a superior court judge.

Through the CINA rules, we have superimposed on the statutory process the superior court's authority to delegate certain judicial tasks to a master.[40] In doing so we have exercised our constitutional authority to regulate "practice and procedure in civil and criminal cases in all courts,"[41] with the goal of promoting judicial efficiency. While substantive law which "creates, defines, and regulates rights" is the domain of the legislature, prescribing the method of enforcing rights falls to the procedural rulemaking power of the judiciary.[42] But we have recognized that procedural rules can affect substantive rights, and when they do we must be careful not to confuse "the concerns that led to the establishment of judicial rulemaking power" with "matters of public policy properly within the sphere of elected representatives."[43] Children's welfare and the

---

[40] CINA Rule 4(a) ("The presiding judge may appoint a standing master to conduct any or all of the CINA proceedings listed in subparagraph (b)(2)."); CINA Rule 4(b)(2) ("The following proceedings may be referred to a master: (A) emergency or temporary custody hearings . . . .").

[41] Alaska Const. art. IV, § 15.

[42] *See Wade v. City of Anchorage*, 439 P.2d 793, 794 (Alaska 1968).

[43] *Nolan v. Sea Airmotive, Inc.*, 627 P.2d 1035, 1042-43 (Alaska 1981); *see also Leege v. Martin*, 379 P.2d 447, 450 (Alaska 1963) ("The administration of justice is the day to day business of the courts; they are better equipped than a legislature to know the most effective and efficient methods of conducting that business.").

parent-child relationship are particularly infused with concerns of public policy.[44]  This requires that we be especially attentive to the effects of procedural rulemaking in cases like this one.

The CINA rules' provision for the delegation of authority from superior court to master is important to the efficient functioning of the courts.  But it is not a reason for inordinate delay in cases in which children should be returned to their homes.  While we decline "to rewrite the rules of practice from the bench,"[45] we acknowledge the importance of this issue, refer it to the CINA Rules Committee, and make the following observations for the committee's consideration.[46]

The procedural deficiency at the center of this case, as we see it, was not that the master could not order the immediate return of the children to their home but

---

[44]    *See* AS 47.05.065 (containing legislative findings on parents' rights and responsibilities relating to their minor children; state policy with regard to families, children, and the state's treatment of children in its custody and care; and studies regarding children's attachment and need for permanence); *Cooper v. State*, 638 P.2d 174, 178 (Alaska 1981) ("Children in need of aid proceedings are intended to promote an important public interest:  the welfare of children.").

[45]    *Caterpillar Tractor Co. v. Beck*, 624 P.2d 790, 793 (Alaska 1981); *see also Buchanan v. State*, 561 P.2d 1197, 1209 (Alaska 1977) ("We are of the view that if discovery is to be expanded beyond the provisions presently contained in our Rules of Criminal Procedure, [it is] more appropriate that such change come through amendment of our existing rules of procedure after full study by this court's Standing Advisory Committee on Criminal Rules, the bench and the bar.").

[46]    *See, e.g.*, *State v. Carlin*, 249 P.3d 752, 763 n.60 (Alaska 2011) (referring matter of substitution of parties in a criminal case to the Standing Advisory Committee on Appellate Rules and noting "the thoughtful consideration of the issue by the Washington Supreme Court"); *Irby v. Fairbanks Gold Min., Inc.*, 203 P.3d 1138,  n.41 (Alaska 2011) (referring matter of waiver of peremptory challenges to the Standing Advisory Committee on the Rules of Civil Procedure); *Cole v. State Farm Ins. Co.*, 128 P.3d 171, 172 n.2 (Alaska 2006) (referring matter of identifying partial, final judgments to the Appellate Rules Committee).

rather that the master's order was not immediately reviewed by the superior court judge. Immediate review would be consistent with the expeditious process contemplated by the statute, AS 47.10.142(d) and (e). As pointed out above, under our CINA rules parties have the right to request that an order removing children from the home be reviewed immediately ("by the end of the next working day"),[47] but there is no corresponding right for orders returning the children home. Whether the master's order is immediately effective or not, we do not see why, in this important context, the rules should not provide the same access to judicial review. We also note that there may be helpful parallels in civil commitment proceedings, where an analogous liberty interest is at stake.[48]

Pending revisions to the governing rules, when referring CINA matters to masters, superior courts should exercise their authority under Civil Rule 53 and CINA Rule 4(b) to include in the orders of reference a requirement for expedited review of any order for returning a child to the parents' custody.[49]

---

[47] CINA Rule 4(f)(3).

[48] For initial involuntary commitment proceedings, the legislature has instituted strict time limits on decisions and their review: "Within 48 hours after the completion of the [initial] screening investigation, a judge may issue an ex parte order orally or in writing, stating that there is probable cause to believe the respondent is mentally ill . . . . The court shall confirm an oral order in writing within 24 hours after it is issued." AS 47.30.700(a).

[49] *See* Civil Rule 53(b) ("The order of reference to the master may specify or limit the master's powers and may direct the master to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of the master's report."); CINA Rule 4(b) ("An order of reference specifying the extent of the master's authority and the type of appointment must be entered in every case assigned to a master.").

## V.     CONCLUSION

We AFFIRM the superior court's temporary custody order.  We refer the issue of procedural delay discussed above to the CINA Rules Committee.