PETER A., Appellant,

v.

STATE of Alaska, DEPARTMENT of HEALTH and SOCIAL SERVICES, OFFICE of CHILDREN'S SERVICES, Appellee.

No. S–12119.

Supreme Court of Alaska.

Nov. 9, 2006.

---

Angela Greene, Assistant Public Defender, Bethel, and Quinlan G. Steiner, Public Defender, Anchorage, for Appellant.

Mary Ann Lundquist, Assistant Attorney General, Fairbanks, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The superior court adjudicated Peter A.'s two children to be children in need of aid (CINA) under AS 47.10.011(6), (9), and (10) after his wife developed an alcohol abuse problem. Peter appeals the adjudication order. He argues that the superior court erred by adjudicating the children to be in need of aid based solely on his wife's conduct, despite his ability and willingness to care for the children. He also argues that the adjudication violates his constitutional right to parent his children and the Indian Child Welfare Act.[1] Because the superior court dismissed the case soon after the adjudication there is no live controversy for this court to decide. Furthermore, because we vacate the adjudication order as a matter of equity, Peter will suffer no collateral consequences from the adjudication. We therefore vacate the adjudication order and dismiss this appeal as moot.

## II. FACTS AND PROCEEDINGS

In 2002 Peter A. suffered a grave and permanent injury in a snow machine accident.[2] While he was recuperating in various hospitals and extended care facilities, his wife, Martha, developed an alcohol abuse

---

1. 25 U.S.C. § 1901 et seq. (1978).

2. We use pseudonyms for all family members.

problem. When an intoxicated Martha appeared with two of their children at Peter's extended care facility in October 2004, the Alaska Office of Children's Services (OCS) took emergency custody of the children, filed an emergency petition for adjudication of the children as in need of aid and for temporary placement, and sent the children to live with Martha's mother in Bethel. Martha soon rejoined the children in her mother's home, but OCS retained supervisory custody.

The Anchorage superior court held a hearing on the emergency petition in November 2004 and found probable cause to believe the children were in need of aid. In December 2004 the Anchorage superior court transferred venue to the superior court in Bethel.[3]

Martha's alcohol abuse problems continued. In May 2005 she was arrested after police found her intoxicated and fighting with another woman.

In late June 2005 Peter left the hospital and returned to his rural village under the care of his extended family. OCS placed his children with him on a trial basis the next day. The parties agree that the placement went smoothly and that the children were happy and well-cared-for in Peter's home.

Around the same time, Martha traveled to Anchorage to seek substance abuse treatment. She was still in treatment in Anchorage in late August 2005 when the disputed adjudication order was entered.

The Bethel superior court entered the August 2005 adjudication order after a protracted and sporadic adjudication hearing between April and August 2005. On August 29 the superior court adjudicated the children to be in need of aid under AS 47.10.011(6) (substantial risk of harm), (9) (neglect), and (10) (substance abuse). It found that by driving the children to Peter's extended care facility while intoxicated, Martha had placed the children at substantial risk of harm. It also found that Martha's relapse and subsequent arrest in May 2005 demonstrated that the children continued to be in need of aid at the time of the adjudication. The adjudication order gave Peter continued custody of the children, subject to state supervision. The order also prohibited Martha from having contact with the children except through arrangements made for visitation with the state, and required Peter to protect the children from unauthorized contact with Martha and to report any such contact to the state.

On October 4, 2005 OCS moved to dismiss the case based on the testimony of a state social worker that the children were no longer at risk. The superior court granted the motion. Although Peter thus ultimately prevailed, he appeals the entry of the adjudication order. He argues that the Indian Child Welfare Act and the United States Constitution prohibit the court from adjudicating children in need of aid based solely on the actions of one parent if there is a second, fit parent who is willing and able to care for the child. He also argues that his children were not in need of aid at the time of adjudication. The state contends that Peter's appeal is moot. Martha is not a party to the appeal.

We heard oral argument in this case on May 9, 2006. We then asked the parties for supplemental briefing on several issues.[4] Because we hold that Peter's appeal is moot, it is unnecessary for us to decide the issues addressed by the supplemental briefs.

## III. DISCUSSION

### A. Standard of Review

██ Because it is a matter of judicial poli-

3. The state filed two CINA cases, one for each child. We refer to them collectively as "the case."

4. Our supplemental briefing order asked the parties to address these issues:
    a. how other jurisdictions have dealt with cases in which the state seeks to adjudicate a child in need of aid over the objections of a non-offending or fit parent;
    b. whether other jurisdictions have found children to be in need of aid based on past conditions that have been alleviated by the time of the adjudication;
    c. whether and to what extent after the state obtains legal custody but before adjudication the state must make efforts to assist a parent who is not unfit in protecting children who are in need of aid from an unfit parent; and
    d. whether the superior court's adjudication findings were adequate for purposes of review.

cy, mootness presents a question of law.[5] We therefore apply our independent judgment to claims of mootness.[6]

## B. Peter's Appeal Is Moot.

■ Pointing out that the superior court, at the state's request, dismissed this case before disposition, the state argues that we should dismiss Peter's appeal of the adjudication as moot. Peter responds that the adjudication of his children as "in need of aid" presents a live controversy both because the judgment has prospective effect and because this case falls within the public interest exception to the mootness doctrine.

■ "A claim is moot if it has lost its character as a present, live controversy." [7] If the party bringing the action would not be entitled to any relief even if it prevails, there is no "case or controversy" for us to decide.[8] A party generally may not appeal a judgment in its favor in order to challenge an interlocutory order.[9] Furthermore, a "naked desire for vindication" does not save an otherwise dead controversy from mootness.[10] Peter must show either that concrete relief would be available to him if this court reversed the adjudication order or that the issue falls into one of the exceptions to the mootness doctrine.

Peter argues that because the adjudication order is separate from the order that dismissed the case before disposition, it is not moot even though an appeal of the dismissal order would be. But an adjudication is merely an intermediate ruling on the path to disposition. Once the superior court dismissed the case, the state lost the power granted it by the adjudication order to interfere with Peter's family. Thus, although the adjudication order may have been, as Peter argues, a "separate order from the disposition," it is not one that has any direct legal effect on Peter after the superior court dismissed the case.

Peter also argues that, even if the adjudication no longer directly affects him, its potential collateral consequences are significant enough to warrant judicial review of the adjudication. He asserts that per AS 47.10.011(10), a child adjudicated to be in need of aid because of a parent's substance abuse is subsequently presumed to be in need of aid if the parent resumes substance abuse within one year of rehabilitation.[11] He also asserts that AS 47.10.011(9) allows a child to be adjudicated in need of aid on the basis of past neglect of another child in the same household.[12]

■ The collateral consequences doctrine allows courts to decide otherwise-moot cases

---

5. *Akpik v. State, Office of Mgmt. & Budget,* 115 P.3d 532, 534 (Alaska 2005).

6. *Id.*

7. *Kleven v. Yukon–Koyukuk Sch. Dist.,* 853 P.2d 518, 523 (Alaska 1993) (quoting *United States v. Geophysical Corp.,* 732 F.2d 693, 698 (9th Cir. 1984)).

8. *Ulmer v. Alaska Rest. & Beverage Ass'n,* 33 P.3d 773, 776 (Alaska 2001).

9. *See Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks,* 48 P.3d 1165, 1168 (Alaska 2002) (holding that union's appeal of "intermediate legal question" was moot because it obtained relief sought from superior court).

10. 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3533, at 212 (2d ed.1984).

11. *See* AS 47.10.011. Under this provision the court may find a child to be a child in need of aid if it finds by a preponderance of the

evidence that the child has been subjected to any of the following:
. . . .
(10) the parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child; *if a court has previously found that a child is a child in need of aid under this paragraph, the resumption of use of an intoxicant by a parent, guardian, or custodian within one year after rehabilitation is prima facie evidence that the ability to parent is substantially impaired and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child as described in this paragraph.*
(Emphasis added.)

12. AS 47.10.011(9) allows adjudication if "conduct by or conditions created by the parent, guardian, or custodian have subjected the child or another child in the same household to neglect."

when "a judgment may carry indirect consequences in addition to its direct force, either as a matter of legal rules or as a matter of practical effect." [13] We have recognized the collateral consequences doctrine. In *E.J. v. State*, we held that a child's claim that he was improperly adjudicated to be delinquent was not moot even though the lower court later declared the adjudication of delinquency to be void *ab initio*. [14] We held that review of the initial delinquency determination was justified, because the child's records were easily obtainable and "could be made available to school authorities, social workers, parole officers, judges imposing sentence for the commission of crimes, the military services, or prospective employers, all of whom might be influenced to the detriment of the minor." [15] Similarly, in *Graham v. State*, we held that the revocation of the plaintiff's driver's license was not moot even though the ninety-day period of revocation had ended. [16] We reasoned in part that "the collateral consequences of a driver's license revocation may be substantial. Such a revocation can result in higher insurance rates, adverse employment consequences and other serious results." [17] Finally, in *Martin v. Dieringer* we held that a petition to remove a personal representative from an estate was not mooted by the fact that the estate had closed and the defendant was no longer the personal representative. [18] We reasoned that the use of the lower court's findings to dismiss a related civil action on collateral estoppel grounds prevented the controversy from becoming moot. [19]

We assume for the sake of discussion that AS 47.10.011(9) and (10) potentially create collateral consequences for Peter. [20] But these consequences would not prevent us from holding that this appeal is moot. In *City of Valdez v. Gavora*, we adopted the practice used by federal courts in disposing of moot claims. [21] At the time, that practice required not only dismissing the appeal, but also vacating the judgment below. [22] Although the United States Supreme Court has since clarified that not all moot claims require vacatur, it has held that vacatur is especially appropriate "when mootness results from unilateral action of the party who prevailed below." [23] Otherwise, the Court explained, the appellant is effectively "forced to acquiesce in the judgment." [24] In other words, when a prevailing party voluntarily moots a case, without the appellant's acquiescence, the appellant, through no fault of his own, is prevented from obtaining appellate review of his claim. We agree with the United States Supreme Court that principles of equity require vacatur of the challenged order in such a case. [25]

---

13. WRIGHT, *supra* note 10, § 3533.3, at 291.

14. *E.J. v. State*, 471 P.2d 367, 368–70 (Alaska 1970).

15. *Id.*

16. *Graham v. State*, 633 P.2d 211, 213 (Alaska 1981).

17. *Id.*

18. *Martin v. Dieringer*, 108 P.3d 234, 236 (Alaska 2005).

19. *Id.*

20. We express no opinion about Peter's interpretation of AS 47.10.011(9) and (10) or whether they may give rise to post-dismissal consequences adverse to him.

21. *City of Valdez v. Gavora, Inc.*, 692 P.2d 959, 960 (Alaska 1984); *see also United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 95 L.Ed. 36 (1950).

22. *City of Valdez*, 692 P.2d at 960.

23. *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994).

24. *Id.; see also Dilley v. Gunn*, 64 F.3d 1365, 1370 (9th Cir.1995) ("'[A] litigant should not be bound by an adverse unreviewed judgment 'when mootness results from unilateral action of the party who prevailed below.' ") (quoting *U.S. Bancorp*, 513 U.S. at 25, 115 S.Ct. 386); *Ocean Conservancy v. Nat'l Marine Fisheries Serv.*, 416 F.Supp.2d 972, 981 (D.Haw.2006) (vacating order denying preliminary injunction after case became moot due to defendant's actions); *cf.* WRIGHT, *supra* note 10, § 3533.10, at 436 (noting that mooted interlocutory appeals do not require vacatur if "the case remains alive in the district court").

25. We express no opinion about whether *Gavora's* seemingly broad assertion that a holding of mootness requires vacating the judgment below should be narrowed in light of the Supreme Court's discussion in *U.S. Bancorp*.

In this case, the validity of the adjudication order became moot because the state voluntarily moved to dismiss the case at disposition. The state's successful motion to dismiss prevented Peter from challenging the merits of the adjudication order on appeal. Because equity therefore requires vacatur of the adjudication order, Peter's argument that collateral consequences arising under AS 47.10.011(9) and (10) render this appeal a live controversy is unconvincing. Peter will not suffer any collateral consequences under these subsections.

Peter's additional argument that the adjudication order is not moot because an adjudication carries "a permanent social stigma" is also unpersuasive. All the records in CINA proceedings are sealed.[26] There is no publicly available record that Peter's children were adjudicated in need of aid. Peter acknowledges that CINA proceedings are confidential but argues that this fact is irrelevant because during the course of the litigation, OCS contacted many of "the people with whom [Peter] has the most contact—his health care providers, his children's teachers, and his tribe" and that these people are thus "aware of the child welfare proceedings against him." This may or may not be so. After all, the proceedings were not "against him" and indeed the essence of his challenge on the merits is that the CINA petition was based only on Martha's misconduct. But because all parties must maintain the confidentiality of all information in the court file, issuing an opinion on the merits and reversing the superior court's confidential adjudication order would not publicly remedy any possible social stigma, to the extent it exists. Because the remedy he is requesting would not redress his alleged injury, social stigma does not give Peter standing to appeal the adjudication order.[27]

### C. The Public Interest Exception to the Mootness Doctrine Does Not Apply.

Peter also argues that the public interest exception to the mootness doctrine applies to this case. In deciding whether to hear a moot appeal under this doctrine, we consider three factors:

(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.[28]

We weigh each of these factors in our discretion to determine whether to hear the case; none of the factors is dispositive.[29]

The state concedes that "two of these factors are arguably present here." It consequently does not dispute that the issues are capable of repetition and that the issues are important to the public interest.[30] The state

---

26. *See* CINA Rule 22(a).

27. *See Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001) (holding that appellant lacked standing to request relief that would not have redressed his alleged injury).

28. *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1168 (Alaska 2002).

29. *Id.*

30. One of the issues at stake in this case that is particularly important to the public interest is the interpretation AS 47.10.011. The parties vigorously dispute whether its subsections are unclear regarding the effect the availability of a non-offending parent willing and able to care for the child may have on the adjudication determination. Peter argues that the statute requires "individualized assessment" of each parent; the state responds that the statute's use of the singular "parent" instead of "parents" allows for adjudication solely on the basis of one parent's actions. The parties also vigorously dispute whether these subsections are unclear about whether children may be adjudicated in need of aid on the basis of a parent's prior acts if the state cannot also demonstrate a continuing risk of harm to the children. Relying on our interpretation of a former version of Title 47, Peter argues that a child must be in need of aid at the time of adjudication. The state argues that recent amendments to the statute allow for consideration of prior conduct of the parents that is unlikely to continue into the future. Because Peter's appeal is moot, we do not need to address these issues today. But we do note that other states have adjudication statutes that are considerably more precise regarding one or both of these issues. *See, e.g.,* ME.REV.STAT. ANN. tit. 22 § 4035(2)(C) (requiring court to make "a jeopardy determination with regard to each parent who has been properly served"); MD.CODE ANN. CTS. & JUD PROC. § 3–819(e) ("If the allegations in the petition are sustained against only

instead contends only that there is no danger that the issues presented in this appeal will be "repeatedly circumvented" in future cases. The state argues that although it is likely that there will be future cases in which children are adjudicated in need of aid because of the actions of one parent, many of those cases will result in a disposition in which the parents' rights are terminated or the parents dispute the placement of the children. In such cases, an appeal of the adjudication decision would not be moot because the possibility of effective relief would be present.

Peter counters that if the court refuses to hear cases in which the state releases custody of the children after a year of litigation, "this fact pattern will be capable of endless repetition, leaving aggrieved parents, like [Peter], with no remedy."

Peter misidentifies the legal issue that must be "repeatedly circumvented" for the public interest exception to apply. The primary issue he would raise in this case is whether children may be adjudicated in need of aid over the objections of one available fit and willing parent. Cases in which the state releases custody of the children and thereby moots a fit parent's appeal are presumably only a subset of those cases in which that issue could arise, and in that subset of cases, relief is available in the form of vacatur. In other cases, in which parents receive unfavorable dispositions, they have the legal right to appeal the adjudication order as well as the disposition order. It therefore seems likely that parents actually harmed by a CINA adjudication will have an opportunity to litigate the same questions Peter raises in this appeal. Because this means that review of the issue in this case is not likely to be "repeatedly circumvented," we decline to apply to this case the public interest exception to the mootness doctrine.

## IV. CONCLUSION

For the reasons discussed above, we VACATE the order adjudicating Peter's children in need of aid and DISMISS this appeal as moot.

one parent of a child, and there is another parent available who is able and willing to care for the child, the court may not find that the child is a child in need of assistance, but, before dismissing the case, the court may award custody to the other parent."); UT.CODE ANN. § 78–3a–301(1)(a)

(allowing removal of child whenever "there is an imminent danger to the physical health or safety of the child; and … the child's physical health or safety may not be protected without removing the child from the custody of the child's parent or guardian").