*Notice:* This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-14534 |
| MARK V. | ) ) | Superior Court No. 4FA-11-00612 PR |
| | ) ) | O P I N I O N |
| | ) ) | No. 6911 - May 16, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Randy M. Olsen, Judge.

Appearances: Marjorie K. Allard and Michael Schwaiger, Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Ruth Botstein, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices, and Eastaugh, Senior Justice.[*] [Carpeneti, Justice, not participating.]

EASTAUGH, Senior Justice.
STOWERS, Justice, with whom MAASSEN, Justice, joins, dissenting.

## I.      INTRODUCTION

In November 2011 the superior court entered a 30-day involuntary civil

---

[*]      Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

commitment order for Mark V. after the court conducted an evidentiary hearing and found that Mark posed a "substantial risk . . . of harming others."[1] Mark argues on appeal that the court clearly erred in so finding. Because his period of commitment under that order has expired and Mark was soon released from custody, his "weight of the evidence" appeal is technically moot. But he argues that the collateral consequences exception to the mootness doctrine nonetheless justifies appellate review of the November 2011 commitment order. The circumstances — including four civil commitment orders entered against Mark earlier in 2011 and the absence of any indication that the November 2011 commitment will result in any additional adverse collateral consequences — convince us that the exception is not satisfied. We therefore do not reach the merits of Mark's appeal and dismiss it as moot.

## II.    FACTS AND PROCEEDINGS

Mark V. had a history of mental illness that led to entry of five earlier involuntary civil commitment orders — one in 2002 and four in 2011 — before entry of the November 2011 order that Mark challenges here.[2] The events leading to the disputed commitment began on November 7, 2011, when Mark arrived in Fairbanks after traveling from Anchorage by taxicab at an approximate cost of $900. Soon after arriving, Mark visited a bank, where his reportedly bizarre and loud behavior prompted a bank teller to trigger the alarm. Mark then went to a Fairbanks residence and had a verbal altercation with an occupant. The home was a rental property belonging to Mark's family, but the tenants were not relatives of Mark. Although the details surrounding the altercation are murky, Mark reportedly exhibited threatening behavior

---

[1]    We use a pseudonym to protect Mark's privacy.

[2]    The parties dispute the number of Mark's prior involuntary commitments. The record reflects five prior commitment orders, including four orders entered in March, May, June, and September 2011.

toward a tenant, who then called the police. The police took Mark to the Fairbanks Memorial Hospital mental health unit, where he was admitted.

On November 8 two mental health professionals applied for an ex parte order authorizing Mark's hospitalization for an evaluation. Superior Court Judge Michael A. MacDonald granted the application the next day, ordered Mark's prompt evaluation, scheduled a hearing on the anticipated 30-day commitment petition, and appointed the Public Defender Agency to represent him.

On November 10 a psychiatrist and a psychologist filed a 30-day civil commitment petition alleging that Mark was mentally ill; they described facts supporting their allegations that he was gravely disabled and that he was likely to cause harm to others. Superior Court Judge Randy M. Olsen conducted the commitment hearing the same day. The court heard testimony from the same psychologist and a different psychiatrist; they both diagnosed Mark as having some form of schizophrenia and bipolar disorder and testified that Mark posed a threat of harm to others if released.

At the conclusion of the hearing, the superior court applied the clear and convincing evidence standard and found that Mark was mentally ill and that as a result of his mental illness Mark was likely to cause serious harm to others. The court relied on the evidence of Mark's recent behavior, including evidence that he threatened a physician, punched a staff member, and engaged in conduct that "rais[ed] such a conflict that people call[ed] 911." The court ordered Mark committed to Alaska Psychiatric Institute (API) for a period not to exceed 30 days.

Mark appeals.

## III.    STANDARD OF REVIEW

We resolve issues of mootness using our independent judgment because,

as a matter of judicial policy, applying the mootness doctrine presents a question of law.[3]

## IV.   DISCUSSION

### A.   The Mootness Doctrine And Its Exceptions

"A claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."[4] Commitment-order appeals based on assertions of insufficient evidence are moot if the commitment period has passed, subject to two exceptions: the public interest exception[5] and the collateral consequences exception.[6]

Mark's appeal from the November 2011 order is technically moot because his period of commitment under that order has expired; the parties agree that he was released from custody. But Mark contends that the collateral consequences exception applies to his appeal. He also suggests that AS 47.30.765 guarantees, as a matter of right, an appeal from any commitment order.

In its Brief of Appellee, the State initially argued that Mark's appeal is moot and does not fall within a recognized exception to the mootness doctrine; the State

---

[3]   *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001) (citing *Kleven v. Yukon-Koyukuk Sch. Dist.*, 853 P.2d 518, 525 n.13 (Alaska 1993)); *see also In re Joan K.*, 273 P.3d 594, 595-96 (Alaska 2012) (citing *In re Tracy C.*, 249 P.3d 1085, 1089 (Alaska 2011)) (explaining that we use our independent judgment and "adopt the rule of law most persuasive in light of precedent, reason, and policy").

[4]   *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380 (Alaska 2007) (quoting *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002)).

[5]   *Id*.

[6]   *In re Joan K.*, 273 P.3d at 597-98 (adopting collateral consequences exception to mootness); *see also In re Jeffrey E.*, 281 P.3d 84, 86 (Alaska 2012) (applying collateral consequences exception to mootness).

therefore urged us to dismiss Mark's appeal as moot. But at oral argument the State instead asked us to review the merits of some otherwise-moot commitment orders to provide more guidance to trial courts.

### B. The Collateral Consequences Exception Does Not Apply To This Case.

#### 1. Framing the issue: *In re Joan K.*

The collateral consequences exception permits courts to decide otherwise-moot cases "when a judgment may carry indirect consequences in addition to its direct force, either as a matter of legal rules or as a matter of practical effect."[7] *In re Joan K.* was an appeal from the appellant's first involuntary civil commitment order.[8] Because her commitment period had ended, Joan K.'s appeal was technically moot.[9] We nonetheless held that the general collateral consequences of her first involuntary commitment order were sufficient to satisfy the collateral consequences exception to mootness, and that no particularized showing of specific collateral consequences was needed to satisfy the exception.[10] Joan K. argued that the consequences included social stigma, adverse employment restrictions, application in future legal proceedings, and restrictions on the right to possess firearms.[11] We did not specify when an individual would be required to make a particularized showing of collateral consequences, but we noted that "some number of prior involuntary commitment orders would likely eliminate the possibility of additional collateral consequences, precluding the [exception's]

---

[7]  *In re Joan K.*, 273 P.3d at 597-98 (quoting *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 994-95 (Alaska 2006)).

[8]  *Id.* at 598.

[9]  *Id.* at 597.

[10]  *Id.* at 598.

[11]  *Id.* at 597.

application."[12]

More recently, in *In re Jeffrey E.*, we applied our holding in *Joan K.* to a sufficiency-of-the-evidence challenge to a commitment order.[13] We noted in *Jeffrey E.* that evidence-based challenges to expired commitment orders are generally moot and will not be reviewed absent an exception to the mootness doctrine.[14] But we held that the collateral consequences exception applied to Jeffrey's appeal because it was Jeffrey's first involuntary commitment:

> Jeffrey appeals the superior court's finding that he was gravely disabled. He does not appeal the mental illness finding or the finding that API was the least restrictive alternative. Although Jeffrey was released from API shortly after being committed and the issue he raises is moot under the standard established in *Wetherhorn v. Alaska Psychiatric Institute*,[15] because this was Jeffrey's first involuntary commitment we consider his appeal under the collateral consequences exception to mootness recently adopted in *In re Hospitalization of Joan K.*[16]

Several circumstances persuade us that the collateral consequences exception does not apply to Mark's appeal. These circumstances include (1) the fact that Mark's challenge is exclusively to the sufficiency of the evidence relied on by the

---

[12]     *Id.* at 598.

[13]     281 P.3d 84, 86 (Alaska 2012) (considering merits of technically moot appeal of first involuntary commitment order).

[14]     *Id.* at 86 & n.5.

[15]     156 P.3d 371, 380 (Alaska 2007) (holding that an evidence-based challenge to an expired 30-day commitment order was moot and would not be reviewed absent an exception to the mootness doctrine).

[16]     *In re Jeffrey E.*, 281 P.3d at 86 (internal citations and footnotes omitted).

superior court; (2) the complete absence of any indication of a procedural or fundamental flaw in the superior court proceedings; (3) the entry of four involuntary civil commitment orders in the eight months preceding entry of the order challenged here; and (4) the absence of any indication the present order might plausibly cause Mark to suffer incrementally significant collateral consequences.

### 2.    Absence of specific collateral consequences

Mark asserts that the adverse collateral consequences resulting from involuntary civil commitment orders do not end with entry of the first such order; he implies that adverse consequences should be presumed from the curtailment of liberty resulting from involuntary commitments. Although he conceded at oral argument on appeal that there had been no particularized showing of collateral consequences, his reply brief asserts that social stigma and the likelihood of future commitments are collateral consequences that grow with each additional commitment. He also contends that commitment orders can affect future legal proceedings; he cites as an example the use of a commitment order to impeach credibility. Mark also argues that appellate review of involuntary commitment orders should occur whenever there is a possibility of collateral consequences.

The State's appellate brief argues that the collateral consequences exception does not apply to Mark's appeal because, given his recent prior commitments, the November 2011 order brought no "easily cognizable additional collateral harms." As we explain, we agree with that contention. Our agreement does not mean that the collateral consequences exception can never apply when a new commitment order is entered. But we are unpersuaded here that there is any plausible likelihood that additional collateral consequences could attach to Mark's November 2011 commitment order. At least five prior commitment orders had been entered against Mark; four were very recent, having been entered in the eight months preceding entry of the order

challenged here. Mark gives us no reason to think that any collateral consequences potentially attributable to the November 2011 order were not equally attributable to the four most-recent prior orders.[17] And he gives us no reason to think that the collateral consequences arising from the earlier 2011 orders had become inconsequential and that the November order therefore inflicted incrementally significant collateral consequences on Mark. He has not convinced us that the disputed order could have resulted in any additional collateral consequences. We are also unconvinced that the mere possibility of additional but unparticularized collateral consequences automatically justifies substantive review of every subsequent involuntary commitment order entered against a respondent.

Importantly, there has been no intimation that the commitment hearing was procedurally or fundamentally flawed in any way.[18] Instead, Mark argues only that the evidence did not support the finding the superior court relied on in entering the commitment order. His argument really seeks a reweighing of the evidence. His substantive arguments therefore raise no issue that might justify departing from our usual approach to reviewing moot issues and our application of the collateral consequences

---

[17] *See In re Joan K.*, 273 P.3d at 598 ("[S]ome number of prior involuntary commitment orders would likely eliminate the possibility of additional collateral consequences . . . ."); *see also In re Jeffrey E.*, 281 P.3d at 86 (holding that collateral consequences exception applied because respondent had no prior commitment orders); *In re Alfred H.H.*, 910 N.E.2d 74, 84 (Ill. 2009) (holding that collateral consequences exception did not apply because "[e]very collateral consequence that can be identified already existed as a result of respondent's [multiple] previous adjudications and felony conviction [for murder]").

[18] *Cf. Wetherhorn*, 156 P.3d at 375-76, 379-80 (internal quotation marks and citations omitted) (recognizing that involuntary commitment is a "massive curtailment of liberty that cannot be accomplished without due process of law" and addressing procedural due process challenges to 30-day commitment petition).

exception.[19]

We conclude that the collateral consequences exception does not apply to this case.

### 3. The availability of an alternative statutory remedy under AS 47.30.850

At oral argument the State asserted that AS 47.30.850 provides a form of alternative relief to respondents, such as Mark, who seek vacatur of commitment orders. Neither party cited this statute before oral argument.

Because the potential availability of alternative relief from civil commitment orders could be pertinent to Mark's arguments that we should review the November 2011 order despite its mootness, we have reviewed the statute to decide whether it might be relevant to our mootness analysis.[20]

Alaska Statute 47.30.850 grants courts the authority to expunge or seal the

---

[19] *See In re Joan K.*, 273 P.3d at 597 ("We . . . do not consider overturning *Wetherhorn*'s holding that an evidentiary-based challenge to a completed 30–day commitment generally is moot."); *see also In re Jeffrey E.*, 281 P.3d at 86 (recognizing evidence-based challenge to completed commitment to be moot, but nonetheless reviewing under collateral consequences exception because it was respondent's first involuntary commitment).

[20] The availability of alternative relief ameliorating an order's collateral consequences is potentially relevant to whether the collateral consequences exception applies in a particular case. *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991 (Alaska 2006), is illustrative. We there assumed that the collateral consequences flowing from an adverse adjudication order would have justified Peter A.'s otherwise-moot appeal, had the State not successfully moved to dismiss the case at the disposition stage. *Id*. at 995-96. Because the resulting vacatur of the adjudication order avoided any collateral consequences to Peter, the exception did not prevent dismissal of his appeal as moot. *Id*. at 996.

records of persons who have been subject to civil commitment proceedings.[21] We conclude that the remedies provided by AS 47.30.850 may avert many of the most onerous collateral consequences that potentially attach to an involuntary civil commitment order.

Alaska Statute 47.30.850 was originally enacted in 1981 as part of a major revision of Alaska's involuntary commitment legal regime.[22] As originally enacted, the statute provided only the remedy of expungement, but in 1992 the statute was amended to allow court records to be sealed as well as expunged.[23] The legislative history shows that the alternative remedy of sealing records was added to allay concerns regarding the unavailability of civil commitment records in subsequent, related criminal proceedings.[24]

---

[21] AS 47.30.850 provides:

> Following the discharge of a respondent from a treatment facility or the issuance of a court order denying a petition for commitment, the respondent may at any time move to have all court records pertaining to the proceedings expunged on condition that the respondent file a full release of all claims of whatever nature arising out of the proceedings and the statements and actions of persons and facilities in connection with the proceedings. Upon the filing of the motion and full release, the court shall order the court records either expunged or sealed, whichever the court considers appropriate under the circumstances.

[22] *See* ch. 84, § 1, SLA 1981, *codified as amended at* AS 47.30.655-.660 and 47.30.670-.915.

[23] *Compare* ch. 84, § 1, SLA 1981, *with* ch. 109, § 11, SLA 1992.

[24] During a legislative hearing, Senator Rick Halford expressed concern that expunged civil commitment records would later be relevant, but unavailable, in related criminal proceedings. Comments of Senator Rick Halford at 0:42, Hearing on Senate Bill (S.B.) 153 Before the Sen. Judiciary Comm., 17th Leg., 2d Sess. (Apr. 23, 1992).
(continued...)

Alaska Statute 47.30.850 states that a respondent, following discharge from a treatment facility or the issuance of a court order denying a commitment petition, "may at any time move to have all court records pertaining to the proceedings expunged," provided any claims arising from the proceedings are waived. If the required motion and full release are filed, the statute provides that "the court shall order the court records either expunged or sealed, whichever the court considers appropriate under the circumstances."[25]

To place the remedies offered by AS 47.30.850 in context, it is worth reviewing the different levels of access to civil commitment records. "Information and records obtained in the course of a screening investigation, evaluation, examination, or treatment are confidential and are not public records, except as the requirements of a hearing under AS 47.30.660–47.30.915 may necessitate a different procedure."[26] Records that are expunged or sealed are subject to greater restriction than records that are merely confidential. Access to confidential records is restricted to the parties, counsel, individuals with a written court order authorizing access, and court personnel.[27] Sealed records are available only to the judge and "persons authorized by written order

---

[24]    (...continued)
He requested that the bill be rewritten to address this concern, *id.* at 0:46; when the Committee next met, the bill had been amended to include the option of sealing records. Comments of Senator Rick Halford at 0:32, Hearing on S.B. 153 Before the Sen. Judiciary Comm., 17th Leg., 2d Sess. (Apr. 30, 1992); *see also* Committee Substitute for Senate Bill (C.S.S.B.) 153 (JUD), 17th Leg., 2d Sess. (1992).

[25]    AS 47.30.850.

[26]    AS 47.30.845.

[27]    Alaska Admin. R. 37.5(c)(4).

of the court."[28]  The court may allow access to non-public information — including information designated as confidential or sealed[29] — if the court finds that "the requestor's interest in disclosure outweighs the potential harm to the person or interests being protected."[30]  The court rules do not define "expunge,"[31] but according to *Black's Law Dictionary*, "expunge" means "[t]o erase or destroy."[32]

Because the parties' briefs did not discuss the statute or its possible effect, we offer no opinion about the full extent of relief the statute provides.[33]  But the statute

---

[28]     Alaska Admin. R. 37.5(c)(5).

[29]     *Id.*

[30]     Alaska Admin. R. 37.7(a). Relevant considerations include, but are not limited to, the risk of injury to individuals, individual privacy rights and interests, proprietary business information, the deliberative process, and public safety. *Id.*

[31]     The probate rules governing civil commitment proceedings contain the court rules' only reference to expunged civil commitment records. *See* Alaska R. Prob. P. 1(b) (stating scope of rules governs "mental commitments under AS 47.30"). The probate rules require that indices be kept for commitments. Alaska R. Prob. P. 3(d). The index of commitments is confidential and the index of commitments for which the records have been expunged under AS 47.30.850 is kept by number. Alaska R. Prob. P. 3(d), (g).

[32]     BLACK'S LAW DICTIONARY 621 (8th ed. 2004).

[33]     We have addressed the expungement remedy in context of a court's inherent power to expunge criminal records. *See Farmer v. State*, 235 P.3d 1012 (Alaska 2010); *Journey v. State*, 895 P.2d 955 (Alaska 1995).  Those cases are distinguishable from Mark's situation because the legislature explicitly authorized expungement in the civil commitment context. Nonetheless, our prior discussions of expungement illuminate some potentially problematic effects of that remedy.  We expressed concern that expungement of records may be too drastic in some contexts. *See Farmer*, 235 P.3d at 1016 (indicating that expungement of records would remove collateral consequences of conviction and was therefore not an appropriate remedy); *Journey*, 895 P.2d at 957 n.6

(continued...)

does confirm the availability of two remedies — expungement and sealing — that give respondents some ability to ameliorate the potentially adverse effects Mark identifies. It therefore supports our view that there is no reason to substantively review Mark's now-moot civil commitment appeal.

### 4. The sufficiency of existing mootness exceptions

There is no question that involuntary civil commitment can severely affect the civil rights of the committed individual. And there is certainly an institutional interest in ensuring that each involuntary civil commitment is justified. But we are not persuaded that these factors require full appellate review of every involuntary civil commitment order, including even those orders whose periods of commitment have expired. In our view, the existing recognized exceptions to the mootness doctrine adequately protect the interests of involuntary civil commitment respondents. Those exceptions will permit substantive appellate review of those orders when review is justified, despite their technical mootness. Because no such exception applies here, we decline to review Mark's November 2011 commitment order.

### C. Alaska Statute 47.30.765 Does Not Supersede The Mootness Doctrine.

Alaska Statute 47.30.765 gives respondents the right to an appeal from an order of involuntary commitment.[34] Although Mark's briefs did not focus on a statutory right to appeal, they referred to the statute to support his argument that we should reach the merits of his appeal. He expanded on this contention at oral argument, where he asserted that the abbreviated nature of commitment hearings warrants review at the

---

[33]    (...continued)
(noting that concerns regarding employer access to criminal history could be satisfied by "less drastic measures" than expungement, such as sealing records).

[34]    AS 47.30.765 provides that "[t]he respondent has the right to an appeal from an order of involuntary commitment."

appellate level. In *Joan K.* we declined to reach an equivalent argument that relied on AS 47.30.765 because we concluded that the collateral consequences exception applied.[35] We expressed skepticism, however, about interpreting the statute to completely override the judicial policy of not deciding moot cases.[36]

Other statutes providing for rights of appeal equivalent to those provided by AS 47.30.765 are scattered throughout Title 47[37] and elsewhere in the Alaska Statutes.[38] The existence of these statutes has not in practice compelled us to review otherwise-moot appeals.[39] Mootness is a judicial doctrine that is intended to avoid

---

[35]  *In re Joan K.*, 273 P.3d 594, 597 & n.12 (Alaska 2012).

[36]  *Id.* at 597 ("Joan's interpretation of [AS 47.30.765] as overriding the judicial policy of not deciding moot cases appears overbroad . . . .").

[37]  For example, AS 47.10.080(i) provides that a parent "may appeal a judgment or order, or the stay, modification, setting aside, revocation, or enlargement of a judgment or order issued by the court [in a Children in Need of Aid proceeding]."

[38]  *See, e.g.*, AS 22.05.010(c) ("A decision of the superior court on an appeal from an administrative agency decision may be appealed to the supreme court as a matter of right."); AS 22.07.020(d) ("An appeal to the court of appeals is a matter of right in all actions and proceedings within its jurisdiction . . . .").

[39]  *See, e.g.*, *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 996 (Alaska 2006) (dismissing as moot father's challenge to order adjudicating his children in need of aid); *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1168 (Alaska 2002) (dismissing as moot appeal from administrative decision); *cf. Sweezey v. State*, 167 P.3d 79, 80 (Alaska App. 2007) (dismissing as moot claim that sentencing judge erroneously rejected proposed mitigating factor); *Allen v. State*, 56 P.3d 683, 685 (Alaska App. 2002) (holding that "when a judge's authority to impose a particular sentence does not rest on the judge's findings concerning contested aggravating or mitigating factors, any challenges to the judge's findings are moot").

needlessly deciding issues in cases in which there is no actual controversy[40] and which would effectively result in advisory opinions.[41] We do not read AS 47.30.765 as requiring appellate review of a moot civil commitment dispute. We express no opinion about whether a statute could validly require the courts of this state to review moot issues or whether any such statute would violate the separation of powers.[42]

## D.    We Decline To Vacate The Commitment Order.

Finally, Mark contends that even if we conclude that the collateral consequences exception does not apply, we should nonetheless vacate the commitment order. He argues that vacatur serves as a safeguard against the possibility that collateral consequences did, in fact, attach to the commitment order. The State did not brief this issue, but at oral argument it opposed routine vacatur in moot commitment-order appeals.

Having concluded that the theoretical possibility of collateral consequences does not itself justify review of this moot appeal, we are likewise unconvinced that there

---

[40]    *Ulmer v. Alaska Rest. & Beverage Ass'n*, 33 P.3d 773, 776 (Alaska 2001) ("A claim will be deemed moot if it has lost its character as a present, live controversy." (quoting *Gerstein v. Axtell*, 960 P.2d 599, 601 (Alaska 1998))).

[41]    *See Hayes v. Charney*, 693 P.2d 831, 834 (Alaska 1985) (dismissing as moot challenge to legislative council contract because legislative session was over and the contract at issue had been fully performed, so opinion by court "would be advisory only").

[42]    We have consistently adhered to the principle that "courts should not resolve abstract questions or issue advisory opinions." *Gilbert M. v. State*, 139 P.3d 581, 586 (Alaska 2006) (quoting *Trustees for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987)). "The separation of powers doctrine limits the authority of each branch to interfere in the powers that have been delegated to the other branches." *Alaska Pub. Interest Research Grp. v. State*, 167 P.3d 27, 35 (Alaska 2007) (citing *Abood v. League of Women Voters*, 743 P.2d 333, 338 (Alaska 1987)).

is any reason to vacate the order below.[43]  We also note that Mark has referred us to no reported cases in which courts both dismissed a commitment-order appeal as moot and vacated the underlying judgment.[44]  We therefore decline to vacate the commitment order.

V.    **CONCLUSION**

For these reasons, we DISMISS the appeal as moot.

---

[43]    Although we are not persuaded it would be appropriate to vacate the order in this case, we express no opinion about whether vacatur might nonetheless be appropriate under circumstances not present here.

[44]    Mark's reliance on *Peter A. v. State*, 146 P.3d 991 (Alaska 2006), and *City of Valdez v. Gavora, Inc.*, 692 P.2d 959 (Alaska 1984), is unavailing.  Although we dismissed both appeals as moot and vacated the underlying judgments, neither of those cases is persuasive in the context of a civil commitment-order appeal.  In *Peter A.* the prevailing party voluntarily mooted the case. 146 P.3d at 995.  In *City of Valdez* the parties reached a settlement agreement that effectively nullified the challenged judgment. 692 P.2d at 960.  Neither case bears on the issue presented here: whether we should routinely vacate involuntary civil commitment orders in moot appeals.

STOWERS, Justice, with whom MAASSEN, Justice, joins, dissenting.

As the court explains, the collateral consequences exception to the mootness doctrine requires this court to decide otherwise-moot cases "when a judgment may carry indirect consequences in addition to its direct force, either as a matter of legal rules or as a matter of practical effect."[45] But necessarily determining when a judgment may carry such indirect consequences for the respondent, or what those consequences may be, requires us to investigate the claim before us and find it unworthy of formal judicial review in its entirety.[46] I find this approach deeply troubling. I continue to believe this court should accept every appeal of an order of involuntary commitment in order to be faithful to a citizen's right to appeal as promised by our legislature in AS 47.30.765,[47] and to honor the citizen's right to due process of law given the massive curtailment of liberty at issue.[48] Significantly, at oral argument the State agreed that every commitment carries some collateral consequences to the respondent's liberty interests and asked us to review the merits of some otherwise-moot commitment orders to provide guidance to the trial courts. I would grant the State's request to review the

---

[45]    Opinion at 5, quoting *In re Joan K.*, 273 P.3d 594, 597-98 (Alaska 2012) (quoting *Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 146 P.3d 991, 994-95 (Alaska 2006)).

[46]    For example, the court believes M.V.'s recent prior commitments effectively swallow any conceivable collateral consequences stemming from the November 2011 order, and the mere possibility of unparticularized collateral consequences of the *last* order cannot automatically justify substantive review of *every* order brought before this court.

[47]    AS 47.30.765 provides that "[t]he respondent has the right to an appeal from an order of involuntary commitment."

[48]    *See In re Joan K.*, 273 P.3d at 608 (Stowers, J., dissenting).

merits of otherwise-moot commitment orders.[49]  I therefore respectfully dissent.

Under our traditional mootness analysis, an appeal of an involuntary commitment order cannot defeat the judicially created doctrine of mootness unless one of two judicially created exceptions applies.[50]  While the court believes these exceptions adequately protect the interests of involuntary commitment respondents to "permit substantive appellate review of those orders when review is justified," in my view, simply determining whether to apply the collateral consequences exception *itself* in this context requires quasi-substantive appellate review, thereby defeating the interests of expediency and judicial economy that mootness traditionally promotes and safeguards.[51]

Here, the court goes through a detailed, four-part analysis spanning several fact-laden pages to determine that there is no reason to substantively review M.V.'s now-moot civil commitment order.  In other words, in order to build a sufficient record to properly litigate the collateral consequences exception, the State must compile a thorough record of prior commitment proceedings.  But the State conceded at oral argument that when "an individual has prior commitments in a remote part of the state or out of state, those records might not be available at all."  And the expedited nature of these proceedings leaves little time for the formal discovery required to convince the court there will or won't be collateral consequences resulting from the order.  Even if the

---

[49]      The State also suggested in oral argument that deciding these cases on the merits would not result in a flood of appeals because the State is "seeing . . . a very small number of appeals and . . . that would continue to be the case if individuals knew they had to have something on the merits in order to win."

[50]      *See In re Joan K.*, 273 P.3d at 597-98 (adopting collateral consequences exception to mootness); *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380-81 (Alaska 2007) (adopting public interest exception to mootness).

[51]      *Honig v. Doe*, 484 U.S. 305, 330-32 (1988) (Rehnquist, C.J., concurring) (discussing the practicalities and prudential considerations of the doctrine).

records were available, the State noted that "we don't want to see these proceedings become a parade of someone's past misdeeds just to build a record on the collateral consequences issue, because that might well be prejudicial to the individual." I agree.

Alaska Statute 47.30.765 plainly reflects the legislature's policy decision that a person who has been ordered to be involuntarily committed "has" — not "may have" — a right to appeal that order: a "respondent has the right to an appeal from an order of involuntary commitment." That the court identifies other cases where in the presence of similar appeal-as-of-right language the court has applied the mootness doctrine only begs the question; more importantly, it ignores the practical reality that in *every* case of involuntary commitment, the 30-day commitment order expires prior to the ripeness of the appeal.[52] In these instances "the citizen's liberty has been alleged to have been wrongfully taken by court process," and so the court "should afford the citizen the opportunity to prove the error and, if proven, obtain judicial acknowledgment that the order was erroneously issued."[53] "The injury inflicted by an erroneously issued order of involuntary commitment 'lives' until the wrong is righted."[54]

While I appreciate the court's identification of AS 47.30.850 as a possible alternative ground of relief to avert "many of the most onerous collateral consequences that potentially attach to an involuntary civil commitment order," I submit that the most onerous consequence of an involuntary civil commitment order may in fact be the absence of a meaningful appeal. Under this court's current application of mootness in involuntary commitment proceedings, the erroneous issuance of an order curtailing a fundamental liberty interest remains a distinct possibility.

---

[52] *In re Joan K.*, 273 P.3d at 607 (Stowers, J., dissenting).

[53] *Id*.

[54] *Id*. at 608.

But even if one were to disagree with my opinion that the court should accept every appeal of an order of involuntary commitment, there are other alternatives far superior to this court's current approach. One such alternative is the one adopted in Minnesota: a rebuttable presumption that there will be collateral consequences from an involuntary commitment order that precludes mootness where "real and substantial disabilities" result from a judgment.[55] As explained by the Minnesota Supreme Court, "[I]f 'real and substantial' disabilities attach to a judgment, we do not require actual evidence of collateral consequences but presume such consequences will result. . . . A party may rebut this presumption of collateral consequences only by showing 'there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged [judgment].' "[56] In this scenario, the State has the burden of rebutting the presumption, and, if it fails, the case proceeds to the appellate court on the merits. The State conceded at oral argument this "would be a practical way to go" because "it [takes] so many more of our resources and the court's resources to adjudicate the collateral consequences issue than it would be just to decide the merits of M.V.'s appeal." I agree with the State and remain mystified why the court persists in failing to recognize and give real meaning to the great liberty interests at stake in cases where Alaskan citizens are involuntarily committed to a mental institution. Consequently, I must dissent.[57]

---

[55]   *In re McCaskill*, 603 N.W.2d 326, 329 (Minn. 1999) (internal quotation marks omitted).

[56]   *Id*. (second alteration in original, citations omitted).

[57]   Notwithstanding the court's detailed analysis of M.V.'s case, it did not reach the merits of whether there was sufficient evidence to support the superior court's issuance of the commitment order. I also do not reach that issue because, given the nature of the court's decision, I am most concerned about M.V.'s and other respondents' rights to appeal, and have no reason to examine the merits.