STOWERS, Justice,
with whom MAASSEN, Justice, joins, dissenting.
As the court explains, the collateral consequences exception to the mootness doctrine requires this court to decide otherwise-moot cases "when a judgment may carry indirect consequences in addition to its direct force,
*849 cither as a matter of legal rules or as a matter of practical effect." [45] But necessarily determining when a judgment may carry such indirect consequences for the respondent, or what those consequences may be, requires us to investigate the claim before us and find it unworthy of formal judicial review in its entirety.[46] I find this approach deeply troubling. I continue to believe this court should accept every appeal of an order of involuntary commitment in order to be faithful to a citizen's right to appeal as promised by our legislature in AS 47.30.765,[47] and to honor the citizen's right to due process of law given the massive curtailment of liberty at issue.[48] Significantly, at oral argument the State agreed that every commitment carries some collateral consequences to the respondent's liberty interests and asked us to review the merits of some otherwise-moot commitment orders to provide guidance to the trial courts. I would grant the State's request to review the merits of otherwise-moot commitment orders.[49] I therefore respectfully dissent.
Under our traditional mootness analysis, an appeal of an involuntary commitment order cannot defeat the judicially created doctrine of mootness unless one of two judicially created exceptions applies.[50] While the court believes these exceptions adequately protect the interests of involuntary commitment respondents to "permit substantive appellate review of those orders when review is justified," in my view, simply determining whether to apply the collateral consequences exception itself in this context requires quasi-substantive appellate review, thereby defeating the interests of expediency and judicial economy that mootness traditionally promotes and safeguards.[51]
Here, the court goes through a detailed, four-part analysis spanning several fact-laden pages to determine that there is no reason to substantively review M.V.'s now-moot civil commitment order. In other words, in order to build a sufficient record to properly litigate the collateral consequences exception, the State must compile a thorough record of prior commitment proceedings. But the State conceded at oral argument that when "an individual has prior commitments in a remote part of the state or out of state, those records might not be available at all." And the expedited nature of these proceedings leaves little time for the formal discovery required to convince the court there will or won't be collateral consequences resulting from the order. Even if the records were available, the State noted that "we don't want to see these proceedings become a parade of someone's past misdeeds just to build a ree-ord on the collateral consequences issue, because that might well be prejudicial to the individual." I agree.
Alaska Statute 47.80.765 plainly reflects the legislature's policy decision that a person who has been ordered to be involuntarily committed "has"-not "may have"-a right to appeal that order: a "respondent has the right to an appeal from an order of involuntary commitment." That the court identifies *850 other cases where in the presence of similar appeal-as-of-right language the court has applied the mootness doctrine only begs the question; more importantly, it ignores the practical reality that in every case of involuntary commitment, the 30-day commitment order expires prior to the ripeness of the appeal.[52] In these instances "the citizen's liberty has been alleged to have been wrongfully taken by court process," and so the court "should afford the citizen the opportunity to prove the error and, if proven, obtain judicial acknowledgment that the order was erroneously issued."[53] "The injury inflicted by an erroneously issued order of involuntary commitment 'lives' until the wrong is righted," [54]
While I appreciate the court's identification of AS 47.80.850 as a possible alternative ground of relief to avert "many of the most onerous collateral consequences that potentially attach to an involuntary civil commitment order," I submit that the most onerous consequence of an involuntary civil commitment order may in fact be the absence of a meaningful appeal. Under this court's current application of mootness in involuntary commitment proceedings, the erroneous issuance of an order curtailing a fundamental liberty interest remains a distinct possibility.
But even if one were to disagree with my opinion that the court should accept every appeal of an order of involuntary commitment, there are other alternatives far superi- or to this court's current approach. One such alternative is the one adopted in Minnesota: a rebuttable presumption that there will be collateral consequences from an involuntary commitment order that precludes mootness where "real and substantial disabilities" result from a judgment[55] As explained by the Minnesota Supreme Court, "[I]f 'real and substantial disabilities attach to a judgment, we do not require actual evidence of collateral consequences but presume such consequences will result.... A party may rebut this presumption of collateral consequences only by showing 'there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged [judgment]'"[56] In this seenario, the State has the burden of rebutting the presumption, and, if it fails, the case proceeds to the appellate court on the merits. The State conceded at oral argument this "would be a practical way to go" because "it [takes] so many more of our resources and the court's resources to adjudicate the collateral consequences issue than it would be just to decide the merits of M.V.'s appeal." I agree with the State and remain mystified why the court persists in failing to recognize and give real meaning to the great liberty interests at stake in cases where Alaskan citizens are involuntarily committed to a mental institution. Consequently, I must dissent.[57]

. Opinion at 5, quoting In re Joan K., 273 P.3d 594, 597-98 (Alaska 2012) (quoting Peter A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs., 146 P.3d 991, 994-95 (Alaska 2006)).

. For example, the court believes M.V.'s recent prior commitments effectively swallow any conceivable collateral consequences stemming from the November 2011 order, and the mere possibility of unparticularized collateral consequences of the last order cannot automatically justify substantive review of every order brought before this court.

. AS 47.30.765 provides that "[the respondent has the right to an appeal from an order of involuntary commitment."

. See In re Joan K., 273 P.3d at 608 (Stowers, J., dissenting).

. The State also suggested in oral argument that deciding these cases on the merits would not result in a flood of appeals because the State is "seeing ... a very small number of appeals and ... that would continue to be the case if individuals knew they had to have something on the merits in order to win."

. See In re Joan K., 273 P.3d at 597-98 (adopting collateral consequences exception to mootness); Wetherhorn v. Alaska Psychiatric Inst., 156 P.3d 371, 380-81 (Alaska 2007) (adopting public interest exception to mootness).

. Honig v. Doe, 484 U.S. 305, 330-32, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (Rehnquist, C.J., concurring) (discussing the practicalities and prudential considerations of the doctrine).

. In re Joan K., 273 P.3d at 607 (Stowers, J., dissenting).

. Id.

. Id. at 608.

. In re McCaskill, 603 N.W.2d 326, 329 (Minn.1999) (internal quotation marks omitted).

, Id. (second alteration in original, citations omitted).

. Notwithstanding the court's detailed analysis of M.V.'s case, it did not reach the merits of whether there was sufficient evidence to support the superior court's issuance of the commitment order. I also do not reach that issue because, given the nature of the court's decision, I am most concerned about M.V.'s and other respondents' rights to appeal, and have no reason to examine the merits.