NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) Supreme Court No. S-17881 |
| MARK V. | ) Superior Court No. 3AN-16-00221 PR ) |
| | ) MEMORANDUM OPINION ) AND JUDGMENT[*] ) |
| | ) No. 1872 – January 19, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: Courtney Lewis, Assistant Public Defender, Renee McFarland, Deputy Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Mark V. Katherine Demarest, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for State of Alaska.

Before: Winfree, Chief Justice, Maassen, Carney, and Henderson, Justices. [Borghesan, Justice, not participating.]

---

[*]     Entered under Alaska Appellate Rule 214.

## I.    BACKGROUND

Mark V.[1] has a long history of mental illness and related hospitalizations.[2] In 2015, while suffering from delusions, Mark stabbed his mother nine times and stabbed his father six times.  He was committed to the custody of Alaska Psychiatric Institute (API) and later declared incompetent to stand trial for criminal charges.  The superior court repeatedly has granted 180-day extensions of Mark's API civil commitment.[3] Mark now appeals the superior court's August 2020 orders extending his commitment for 180 days and authorizing administration of psychotropic medication; he contends that the court erred by finding that he was a danger to others and by finding that he lacked the capacity to give or withhold informed consent to psychotropic medications.  Seeing no error, we affirm both orders.

---

[1]    We use a pseudonym to protect the individual's identity.

[2]    *In re Hospitalization of Mark V.*, 324 P.3d 840, 842-43, 848 (Alaska 2014) (noting Mark's history of mental illness leading to 2002 involuntary commitment order and four previous 30-day involuntary commitment orders earlier in 2011; finding moot Mark's appeal of sixth 30-day involuntary commitment order based on clear and convincing evidence he was mentally ill and likely to cause serious harm to others), *overruled by In re Hospitalization of Naomi B.*, 435 P.3d 918 (Alaska 2019); *In re Hospitalization of Mark V.*, 375 P.3d 51, 60 (Alaska 2016) (affirming Mark's 2014 30-day involuntary commitment order based on clear and convincing evidence he was mentally ill, gravely disabled, and "no less restrictive alternative . . . would adequately protect both [Mark] and the public"); *In re Hospitalization of Mark V.*, ___ P.3d ___, Op. No. 7576 at 2, 20, 2021 WL 6141630, at *1, *10 (Alaska Dec. 30,  2021) (noting Mark remained involuntarily committed at API since 2015 and affirming January 2020 180-day involuntary commitment order and June 2020 involuntary medication order).

[3]    *See* AS 47.30.770 (setting out 180-day commitment procedure); *In re Mark V.*, Op. No. 7576 at 2, 20, 2021 WL 6141630, at *1, *10 (noting Mark remained involuntarily committed at API since 2015 and affirming January 2020 180-day involuntary commitment order).

## II.    FACTS AND PROCEEDINGS

In April 2020 API petitioned to extend Mark's involuntary commitment for an additional 180 days.  The court held a hearing and took testimony from Mark and a psychiatric expert.  The psychiatric expert testified, among other things, to believing Mark had become "a lot more hostile and impulsive" and to recently having heard Mark say "that he justifies having stabbed his parents and would do it again."

The court found that Mark's schizoaffective disorder was undisputed; that the psychiatric expert believed Mark's condition was becoming "more psychotic, manic, disorganized and verbally combative"; and that Mark was "delusional and hallucinating" and "not able to converse rationally or exchange thoughts and ideas, which he ha[d] been able to do in the past."  The court found that API staff attributed these changes to Mark "having recently stopped taking his medications, resulting in rapid decompensation."  The court credited the psychiatric expert's testimony that Mark's threatening verbal expressions, specifically his "desire to have sex with underage girls" and his "homicidal thoughts toward other patients and API staff," can be "precursors to physical violence."  The court concluded there was "clear and convincing evidence that [Mark was] both mentally ill and, as a result, . . . likely to cause serious harm to . . . others" and ordered Mark committed for another 180 days.[4]

In July API petitioned for approval to involuntarily administer psychotropic medication after Mark quit taking his medications.[5]  The superior court held a hearing

---

[4]    *See* AS 47.30.755(a) (requiring court to find "by clear and convincing evidence that the respondent is mentally ill and as a result is likely to cause harm to self or others" before ordering involuntary commitment); *see also* AS 47.30.915(12) (defining "likely to cause serious harm").

[5]    *See* AS 47.30.839 (describing procedures for seeking court order to administer psychotropic medication).

and took testimony from a psychiatric expert, a court-appointed visitor, and Mark.[6]

The court found that Mark lacked capacity "to give informed consent concerning the administration of psychotropic medications."[7] The court relied on the psychiatric expert's testimony that the medications would prevent "potentially irreparable brain cell loss." The court concluded there was "clear and convincing evidence that the administration of psychotropic medication" was in Mark's best interests and that there was "no other reasonable less restrictive alternative to the proposed course of treatment,"[8] and it approved API's proposed medication plan.

## III. RESOLUTION OF MARK'S APPEAL

Mark argues that the superior court erred in its determinations because the evidence shows that: (1) he is not a danger to others because his last violent incident was in 2015, and since then he only has made statements that might be construed as threatening but were merely frustrated responses to confinement; and (2) he has been considered competent to give consent for other medical purposes, such as dental procedures, and his choice to resist psychotropic medication that he believes has harmful side effects is not conclusive of his capacity to give informed consent.

---

[6] *See* AS 47.30.839(d) (requiring court to "provide a visitor to assist the court in investigating . . . whether the patient has the capacity to give or withhold informed consent").

[7] *See* AS 47.30.837(a) (explaining capacity to give informed consent is evaluated based on whether "patient is competent to make mental health or medical treatment decisions and the consent is voluntary and informed").

[8] *See Myers v. Alaska Psychiatric Inst.*, 138 P.3d 238, 254 (Alaska 2006) (holding court must "expressly find[] by clear and convincing evidence that the proposed treatment is in the patient's best interests and that no less intrusive alternative is available").

We have reviewed the record,[9] and we conclude that it supports the superior court's findings, by clear and convincing evidence, that: Mark's long-standing mental health issues continued to worsen; he posed a serious risk of harm to others; he lacked capacity to make an informed decision about medication; involuntary administration of psychotropic medication was in his best interests; and there was no less restrictive alternative. We AFFIRM the superior court's orders granting the petition for an additional 180-day API commitment and approving administration of psychotropic medication.

---

[9] "We review the superior court's factual findings in involuntary commitment or medication proceedings for clear error and reverse those findings only if we have a 'definite and firm conviction that a mistake has been made.' " *In re Hospitalization of Naomi B.*, 435 P.3d 918, 923 (Alaska 2019) (quoting *In re Hospitalization of Jacob S.*, 384 P.3d 758, 763-64 (Alaska 2016)). "Whether those findings meet the involuntary commitment and medication statutory requirements is a question of law we review de novo." *In re Jacob S.*, 384 P.3d at 764.